Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/23/2018 12:11 AM CST

STATE OF NEBRASKA, APPELLEE, V.
BENJAMIN M. THOMPSON, APPELLANT.

___ N.W.2d ___

Filed November 2, 2018.    No. S-17-952.

1. **Judges: Recusal.** A recusal motion is initially addressed to the discretion of the judge to whom the motion is directed.
2. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.
3. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.
4. **Trial: Judges: Words and Phrases.** An ex parte communication occurs when a judge communicates with any person concerning a pending or impending proceeding without notice to an adverse party.
5. **Trial: Judges: Recusal.** A judge who initiates or invites and receives an ex parte communication concerning a pending or impending proceeding must recuse himself or herself from the proceedings when a litigant requests such recusal.
6. **Judges: Recusal.** A judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.

7. **Criminal Law: Appeal and Error.** Harmless error jurisprudence recognizes that not all trial errors, even those of constitutional magnitude, entitle a criminal defendant to the reversal of an adverse trial result.

8. **Convictions: Appeal and Error.** It is only prejudicial error, that is, error which cannot be said to be harmless beyond a reasonable doubt, which requires that a conviction be set aside.

9. **Appeal and Error.** When determining whether an alleged error is so prejudicial as to justify reversal, courts generally consider whether the error, in light of the totality of the record, influenced the outcome of the case.

10. **Verdicts: Juries: Appeal and Error.** Harmless error review looks to the basis on which the jury actually rested its verdict. The inquiry is not whether in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the actual guilty verdict rendered was surely unattributable to the error.

Appeal from the District Court for Douglas County: Gregory M. Schatz, Judge. Affirmed in part, and in part vacated and remanded for resentencing.

Thomas C. Riley, Douglas County Public Defender, and Zoë R. Wade for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

Benjamin M. Thompson was operating a motor vehicle in which his three children were passengers. Thompson's vehicle was struck by another vehicle, resulting in severe injury to two of the children. Following a jury trial, Thompson was convicted of driving under the influence, fifth offense; two counts of child abuse resulting in serious bodily injury; a single count of child abuse; and leaving the scene of an injury accident. Thompson now appeals from the district court's denial of several pretrial motions, including a motion

to recuse, a motion to suppress the results of his blood alcohol testing, and a *Franks v. Delaware*[1] motion to exclude the results of his blood testing. We affirm Thompson's convictions, but vacate the sentences imposed and remand the cause for resentencing.

## BACKGROUND

On October 24, 2016, at approximately 2 p.m., police and medical personnel were dispatched to an injury accident near the intersection of Sorensen Parkway and 30th Streets in Omaha, Nebraska. One of the responding officers spoke to Randall Plugge, who reported that he had been involved in the accident. Plugge further reported that another vehicle, a white Nissan, had also been involved in the accident, but had left the scene and was heading north.

Based on this information, an officer drove his cruiser north on 30th Street, following a noticeable gouge mark in the pavement, to a local park. The officer noted a white Nissan automobile in the parking lot, heavily damaged, with a man, later identified as Thompson, running from the Nissan to a trash can. In making contact with Thompson, the officer noted that Thompson's hands were wet and that he smelled of alcohol. Thompson was ordered to the ground, and was handcuffed and arrested. An officer who later processed the scene testified at trial that there were both full and empty hard alcohol and beer containers in the car and in the trash can. There was also a bottle of lorazepam, prescribed to Thompson, in the car.

After being arrested, Thompson reported that his children were in the Nissan. The officer observed three children in the back seat: a 1-year-old, who was conscious and crying in a car seat; a 6-year old, who was slumped over and unconscious; and an 8-year-old, who was slumped over and unconscious and bleeding from her chin, mouth, and head.

---

[1] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

The three children were transported to the hospital. The 1-year-old was hospitalized for 2 days for trauma caused by the collision. The 6-year-old was in intensive care for 3 days and was diagnosed with a significant and "life-threatening" head injury.

The 8-year-old's condition was worse than those of the younger children. Her injuries were life-threatening and required a breathing tube and ventilator. A monitor was implanted in her brain to monitor swelling. One of her doctors testified that on a "Glasgow Coma Score," which scores range from 3 to 15, with 3 being the worst, the child began as a 5, but later regressed to a 3. He testified that 7 months' postcrash, her eyes were open, but she was unaware of her environment and only "stare[s] off into space." The doctor testified that the child's prognosis was poor and that she would probably never fully recover, would need to be fed through a feeding tube, and would wear diapers for the rest of her life.

Law enforcement applied for and was issued a warrant to obtain a blood draw from Thompson for purposes of determining his blood alcohol content. The sample tested at .115 gram of alcohol per 100 milliliters of blood. Thompson was charged by information with driving under the influence, fifth offense; child abuse; two counts of child abuse resulting in serious bodily injury; and leaving the scene of an injury accident. Counsel filed three pretrial motions which are relevant on appeal.

*Motion to Recuse.*

Following his arrest, Thompson was incarcerated while awaiting trial. He sought a furlough to visit his daughter in the hospital, as her doctors testified that she was not likely to survive. The State opposed the motion, noting both the serious nature of the child's injuries—specifically, that she would not recover and that life support was the only thing keeping her alive—and the fact that those injuries were the result of Thompson's actions. After noting in the record that "in view of the seriousness of the offense, that [Thompson] is charged

with a Class IIA Felony, 'Which may, from what the prosecutor tells me, change were this person to expire,'" the district court denied the motion.

Thompson subsequently filed a motion to recuse, basing the motion on the district court's statement that it was aware that were the child to die, the State would amend the charges against Thompson. Thompson's counsel indicated that she, counsel, was not present for any such communication with the State and that the court could have discovered that intention only as a result of an ex parte communication with the State. At a hearing on the motion, the State offered into evidence an affidavit from the deputy county attorney on the case, averring that no communication on the matter alleged was had between the State and the district court.

Following the hearing, the district court denied the motion to recuse, noting that even if the evidence was clear that such a communication had taken place (and, the court implied, such was not clear), that communication would not draw into the question the court's impartiality because of the facts of this particular case: namely, that the accident was alleged to have been caused by Thompson and that it was presumed that had the child died, the State would amend the charges accordingly.

*Motion to Suppress and
Franks Motion.*

Thompson also filed a motion to suppress on March 23, 2017, and a motion seeking a hearing under *Franks v. Delaware* on April 13; both seeking to suppress the blood draw. The bases of the motion to suppress was Thompson's assertion that the affidavit accompanying the request for the warrant did not contain sufficient information to establish probable cause and that it was so lacking in indicia of probable cause as to make the good faith exception inapplicable. The basis of the *Franks* motion was that the affidavit accompanying the request for a search warrant included false statements made knowingly or intentionally or with reckless

disregard for the truth. A hearing was held on both motions. On May 11, the district court denied both motions.

*Trial.*

A 7-day jury trial was held in May 2017. At trial, the State introduced evidence that Thompson had run a red light, causing the accident. The State also introduced evidence that Thompson admitted to drinking and offered further evidence indicating that after the accident, Thompson drove his car from the scene to a park. Following the trial, the jury found Thompson guilty on all counts. Thompson appeals.

## ASSIGNMENTS OF ERROR

Thompson assigns that the district court erred in denying his motions to (1) recuse, (2) suppress blood test results, and (3) exclude blood test results under *Franks*.

## STANDARD OF REVIEW

[1] A recusal motion is initially addressed to the discretion of the judge to whom the motion is directed.[2]

[2] In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination.[3]

[3] Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.[4]

---

[2] *State v. Thomas*, 268 Neb. 570, 685 N.W.2d 69 (2004).

[3] *State v. Taylor*, 300 Neb. 629, 915 N.W.2d 568 (2018).

[4] *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018).

## ANALYSIS

*Motion to Recuse.*

In his first assignment of error, Thompson contends that the district court erred in denying his motion seeking the recusal of the district court as a result of an ex parte communication with the prosecution.

In this case, the district court concluded that it need not recuse itself, because Thompson could not show prejudice even if he could show that the alleged communication occurred. We agree that this was not the correct framework to analyze Thompson's claim.

[4,5] Thompson claimed that the district court and counsel for the State engaged in an ex parte communication. An ex parte communication occurs when a judge communicates with any person concerning a pending or impending proceeding without notice to an adverse party.[5] A judge who initiates or invites and receives an ex parte communication concerning a pending or impending proceeding must recuse himself or herself from the proceedings when a litigant requests such recusal.[6]

[6] In addition to recusal based upon an ex parte communication, a judge should also recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.[7]

Because Thompson alleged an ex parte communication and not bias or prejudice, the district court erred insofar as it found Thompson could not show that the court was prejudiced. But because Thompson failed to meet his burden to show that there was an ex parte communication, there was still no error in the district court's decision to deny the motion to recuse.

---

[5] *State v. Thomas, supra* note 2.

[6] *Id.*

[7] *Id.*

The district court's statement that were the child to die, it "presumed that the State would amend the charges . . . accordingly," was the primary basis of Thompson's assertion of an ex parte communication. But the prosecutor offered an affidavit stating that no ex parte communication occurred, and the district court made no such finding either. While its finding could have been more clear, implicit in the court's order was that it only "presumed" that the child's death would result in an amendment of the charges. There is no merit to Thompson's first assignment of error.

*Suppression of Blood Test Results.*

In his second assignment of error, Thompson contends that the affidavit supporting the issuance of the search warrant allowing the blood draw did not establish probable cause. And in his third and final assignment of error, Thompson assigns that the district court erred in denying his motion to suppress the blood draw based upon *Franks v. Delaware*.[8]

We need not address the questions raised about the suppression of the blood draw under either the Fourth Amendment or *Franks*, because we conclude that any admission of the blood draw results was harmless error.

[7,8] Harmless error jurisprudence recognizes that not all trial errors, even those of constitutional magnitude, entitle a criminal defendant to the reversal of an adverse trial result.[9] It is only prejudicial error, that is, error which cannot be said to be harmless beyond a reasonable doubt, which requires that a conviction be set aside.[10]

[9,10] When determining whether an alleged error is so prejudicial as to justify reversal, courts generally consider whether the error, in light of the totality of the record, influenced the outcome of the case.[11] In other words, harmless error review

---

[8] *Franks v. Delaware, supra* note 1.

[9] *State v. Kidder*, 299 Neb. 232, 908 N.W.2d 1 (2018).

[10] *Id.*

[11] *Id.*

looks to the basis on which the jury actually rested its verdict.[12] The inquiry is not whether in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the actual guilty verdict rendered was surely unattributable to the error.[13]

In this case, there is a significant amount of evidence that Thompson was under the influence. He fled from the scene of the collision and stopped at a park, where an officer witnessed him discarding both empty and full bottles of alcohol and beer as his children sat injured in the back seat of his vehicle. In addition, open beer cans and a bottle of whiskey were found in that vehicle. Thompson admitted that he had consumed a beer and two wine coolers about 2 hours before the collision.

Also in Thompson's vehicle was a bottle containing 12 lorazepam pills. The label on the bottle indicated the prescription had been filled 6 days earlier and directed Thompson to take just one pill every 8 hours as needed. If taken as prescribed, there should have been approximately 42 pills left in the bottle. Thompson told officers at the time he was being interviewed—several hours after the collision—that he was still feeling the effects of the medications he had taken, which included lorazepam and Lyrica.

In addition, there was testimony that Thompson smelled of alcohol, had bloodshot eyes, had slurred speech, and repeatedly said that he was not "'fucked up'" at a time when officers were trying only to obtain biographical information for him and his children. Moreover, Thompson gave inconsistent explanations about where he was going at the time of the collision. Thompson also gave inconsistent details about his home address, variously indicating that he lived in Nebraska City, Nebraska, and in Fort Calhoun, Nebraska, when in fact his registered address was in Omaha.

---

[12] *Id.*

[13] *Id.*

Officers also testified that Thompson showed impairment during field sobriety tests. Though these tests might not have been performed correctly by the officers, there was testimony that the tests were still valid to identify signs of impairment. Finally, officers testified that based upon their observations over a 4-hour period, Thompson was intoxicated.

There was an abundance of evidence offered that Thompson was intoxicated. On these facts, any error in the admission of the blood test results was harmless. There is no merit to Thompson's second or third assignments of error.

*Plain Error in Sentencing.*

The State argued in its brief that the district court erred in sentencing Thompson to license revocations for his convictions for counts 2, 3, and 5. At oral arguments, the State further noted that it believed the district court erred in failing to sentence Thompson to indeterminate sentences on counts 2 and 3.

Thompson was sentenced for his convictions to 12 to 15 years' imprisonment on count 1, driving under the influence, a Class IIA felony; 3 years' imprisonment on count 2, child abuse resulting in serious bodily injury, a Class II felony; 3 years' imprisonment on count 3, also the Class II felony of child abuse resulting in serious bodily injury; 1 year's imprisonment on count 4, child abuse, a Class IIIA felony; and 3 years' imprisonment on count 5, leaving the scene of a personal injury accident resulting in serious bodily injury, a Class III felony. The district court additionally revoked Thompson's operator's license in connection with his convictions on counts 1, 2, 3, and 5.

We turn first to the argument made by the State in its brief, that the operator's license revocations for the convictions on counts 2 and 3 were plain error. We agree.

Neb. Rev. Stat. § 60-6,197.03(9) (Cum. Supp. 2016) authorizes a 15-year license revocation for driving under the influence, fifth offense, and Neb. Rev. Stat. § 60-698(2) (Cum. Supp. 2016) authorizes the same for leaving the scene of a

personal injury accident. But there is no authorization in state law for such a revocation for child abuse convictions.[14] We therefore agree with the State that these revocations constituted plain error.

We turn next to the State's assertion at oral argument that the determinate sentences imposed for counts 2 through 5 were not authorized. The basis for this contention is Neb. Rev. Stat. §§ 29-2204 (Supp. 2017) and 29-2204.02 (Reissue 2016). Section 29-2204 provides in relevant part:

(1) Except when a term of life imprisonment is required by law, in imposing a sentence upon an offender for any class of felony other than a Class III, IIIA, or IV felony, the court shall fix the minimum and the maximum terms of the sentence to be served within the limits provided by law. The maximum term shall not be greater than the maximum limit provided by law, and:

(a) The minimum term fixed by the court shall be any term of years less than the maximum term imposed by the court; or

(b) The minimum term shall be the minimum limit provided by law.

And § 29-2204.02(4) provides:

For any sentence of imprisonment for a Class III, IIIA, or IV felony for an offense committed on or after August 30, 2015, imposed consecutively or concurrently with (a) a sentence for a Class III, IIIA, or IV felony for an offense committed prior to August 30, 2015, or (b) a sentence of imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony, the court shall impose an indeterminate sentence within the applicable range in section 28-105 that does not include a period of post-release supervision, in accordance with the process set forth in section 29-2204.

We recently explained the distinction between determinate and indeterminate sentences:

---

[14] See Neb. Rev. Stat. § 28-707 (Reissue 2016).

A determinate sentence is imposed when the defendant is sentenced to a single term of years, such as a sentence of 2 years' imprisonment. . . . In contrast, when imposing an indeterminate sentence, a sentencing court ordinarily articulates either a minimum term and maximum term or a range of time for which a defendant is to be incarcerated. In Nebraska, the fact that the minimum term and maximum term of a sentence are the same does not affect the sentence's status as an indeterminate sentence.[15]

When read together and applied to these facts, §§ 29-2204(1) and 29-2204.02(4) require Thompson to be sentenced to indeterminate sentences on all five counts. Under § 29-2204, a defendant convicted of a Class IIA felony, as Thompson was for driving under the influence, fifth offense, must be sentenced to an indeterminate sentence. Thompson was sentenced to 12 to 15 years' imprisonment for driving under the influence, and thus, this sentence was correct.

But the sentences imposed for Thompson's convictions on counts 2 and 3, both counts of child abuse resulting in serious bodily injury, a Class II felony, were not indeterminate as required under § 29-2204.02; rather, Thompson was sentenced to a determinate sentence of 3 years' imprisonment for each count. These sentences were plain error.

Moreover, § 29-2204.02(4) provides that for "any sentence of imprisonment for a Class III, IIIA, or IV felony . . . imposed consecutively or concurrently with . . . a sentence of imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony, the court shall impose an indeterminate sentence within the applicable range." In count 4, Thompson was convicted of child abuse, a Class IIIA felony, and was sentenced to a determinate sentence of 1 year's imprisonment. In count 5, he was convicted of leaving the scene of a personal injury accident, a

---

[15] *State v. Artis*, 296 Neb. 172, 179, 893 N.W.2d 421, 427-28 (2017), *modified on denial of rehearing* 296 Neb. 606, 894 N.W.2d 349.

Class III felony, and was sentenced to a determinate sentence of 3 years' imprisonment. But because these sentences were imposed consecutively with Thompson's Class II and Class IIA felonies, these sentences should have also been indeterminate. We therefore find plain error in these sentences.

Given this plain error, we vacate Thompson's sentences for his convictions on counts 2 through 5 in their entirety and remand those counts for resentencing.

## CONCLUSION

We vacate the sentences imposed for Thompson's convictions on counts 2 through 5 in their entirety. We otherwise affirm the judgments and convictions of the district court and remand this cause to the district court for resentencing on counts 2 through 5.

Affirmed in part, and in part vacated
and remanded for resentencing.