IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. DUNN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TREVOR DUNN, APPELLANT.

Filed January 15, 2019.    No. A-17-1115.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge. Affirmed as modified.

Bell Island, of Island Law Office, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Trevor Dunn appeals his conviction in the district court for Scotts Bluff County for driving under the influence, second offense, with refusal to submit to a chemical test. He assigns that the district court erred in failing to sustain his motion to suppress. He argues that the vehicle checkpoint where law enforcement collected evidence against him was an unconstitutional seizure. Finding no merit to Dunn's arguments, we affirm his conviction with a minor modification to his sentence.

## BACKGROUND

On October 21, 2016, Troopers Courtney Horak, Brandon Bulke, and Madison Norrie with the Nebraska State Patrol set up a vehicle checkpoint at the intersection of East Lyman Road and South Morrill Road in Scotts Bluff County. During the approximately 1-hour check, Bulke and

Norrie stopped Dunn. They determined him to be intoxicated, arrested him for driving under the influence of alcohol, and detained him in the county jail.

On January 5, 2017, the State filed an information charging Dunn with one count of driving under the influence, third offense, with refusal under Neb. Rev. Stat. § 60-6,196 (Cum. Supp. 2016), a Class IIIA felony, and one count of refusal to submit to a chemical test under Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2016), a Class W misdemeanor.

Dunn filed a motion to suppress, which alleged that law enforcement collected all evidence against him through an unlawful seizure in violation of the 4th, 5th, and 14th Amendments to the U.S. Constitution and Art. I. §§ 1, 3, and 7 of the Nebraska Constitution. The district court held a hearing on Dunn's motion on May 10, 2017. Horak, Bulke, and Norrie all testified.

Horak is a trooper with the Nebraska State Patrol, and Sergeant Buxbaum is her supervisor. Horak works vehicle checkpoints when they are assigned to her. Generally, one of her supervisors decides the location and time of the checkpoint, and then he or she notifies the troopers assigned to that checkpoint.

Horak had reviewed the Nebraska State Patrol's policy for vehicle checkpoints, which the court admitted into evidence. Among other requirements, the policy stated "[t]he decision to make the vehicle stop or limited special purpose checkpoint must be made by a neutral source, such as a supervisor who is not involved in conducting the operation in the field." That neutral source must choose the location of the checkpoint at the time he or she decides to order that it occur. The policy allows troopers to perform a vehicle checkpoint "in cooperation with other law enforcement agencies following this or comparable policies." Additionally, except at times of heavy traffic flow or when there were more than three waiting vehicles per officer, the policy required all vehicles to be stopped and checked.

In Horak's experience performing checkpoints, officers receive a map of the checkpoint and directions on where to position the checkpoint's signs. The officers also usually receive the link to a computerized document that records who participated in the check, the people those officers stopped, and any activity the officers observed during the check. Checkpoint supervisors must ensure that the check is set up according to the directions on the map.

Horak was assigned to be the supervisor of the October 21, 2016, checkpoint. As such, she ensured that the assigned officers followed the checkpoint plan and policy. Buhlke and Norrie were assigned to work with her. The plan, which the court admitted into evidence, required the officers to stop all traffic that passed through the intersection of East Lyman Road and South Morrill Road between 11 p.m. and 12:01 a.m. According to Horak, this was a limited purpose checkpoint in which the officers checked drivers' licenses, registration, and proof of insurance. Drivers were not required to exit their vehicle unless another law violation was observed. Although the plan stated that Buxbaum approved it at 1600 hours on October 21, it did not contain Buxbaum's signature. Horak testified that the officers followed the plan.

Horak did not know why the particular location and time for the October 21, 2016, checkpoint were selected. Generally, State Patrol supervisors select locations for checkpoints that have issues with vehicle accidents, drunk driving, and any type of criminal activity.

Bulke works in traffic enforcement at the Nebraska State Patrol and Buxbaum assigned him to the checkpoint on October 21, 2016. He was instructed to check the vehicles' licenses, registration, and insurance. In addition to the three troopers, a game and parks officer was present

at the stop. Dunn approached the vehicle check from East Lyman heading eastbound with no visible signs of impairment. Bulke and Norrie contacted Dunn at the checkpoint. Bulke approached Dunn on the driver side of his vehicle. Bulke detected the odor of alcohol emitting from Dunn's vehicle when he asked Dunn to produce his license registration, and insurance.

Bulke asked Dunn to pull off to the side of the road and asked whether he had anything to drink. Dunn replied that he had "one or two or one and a half." When Dunn stepped out of the vehicle, Bulke observed spilled beer on the vehicle's floor as well as beer cans in the back seat behind the driver's seat and under the driver's seat in front. Dunn stumbled and swayed as he got out of the vehicle and walked over to the patrol unit. He refused the standardized field sobriety tests. Bulke then asked Dunn to take a seat in the front of the patrol unit. Bulke administered a preliminary breath test, which showed that Dunn had a blood alcohol level of 0.248 per 210 liters of breath. Dunn was then placed under arrest for operating a motor vehicle under the influence of alcohol.

Norrie was a traffic trooper with the Nebraska State Patrol on field training during the October 21, 2016, vehicle checkpoint. She also had contact with Dunn. Norrie approached the passenger's side of Dunn's vehicle and noticed fresh drippings on the middle console. After shining her flashlight into the car, she saw open containers of beer in the back seat and underneath the driver's seat. She observed Dunn stumble out of his vehicle and struggled to put on his jacket, which together led Norrie to believe he was impaired by alcohol.

Norrie observed Bulke administer a breath test on Dunn, the results of which led them to arrest him for driving under the influence of alcohol. They took him to the Scotts Bluff County jail, where Norrie read the post arrest advisement form to Dunn, and he signed it. She also advised Dunn that refusal to take the chemical test was its own separate crime. Nevertheless, Dunn refused to provide a chemical test.

The district court entered an order denying Dunn's motion to suppress. The order made the following findings relevant to Dunn's arguments on appeal: Buxbaum approved a checkpoint to occur at the intersection of East Lyman Road and South Morrill Road in Scotts Bluff County, where there had been a number of accidents. The purpose of the checkpoint was to check license, registration, and insurance. The checkpoint was conducted in accordance with the State Patrol policies and procedures for a valid purpose, and all vehicles that entered the intersection were stopped. The check was not operated under the "unfettered discretion of law enforcement officers."

On August 29, 2017, the district court held a trial on stipulated facts, which summarized the testimony from the May 10 suppression hearing. Dunn objected to the contents of the stipulation on the same grounds as his motion to suppress. The court overruled Dunn's objection, and received the stipulated facts into evidence. The court then noted the following agreement:

> The evidence that the Court will receive in order to make a guilt or innocence finding is [the stipulation]. The State will dismiss by Amended Information the second charge in the Information, which is refusal to submit to a chemical test, and the case will be enhanced by the State through the offering of evidence here today to a second, rather than a third offense.

Our record does not contain the above referenced amended information. The court also received the transcript from one of Dunn's prior convictions for driving under the influence of alcohol.

The district court entered an order on September 5, 2017. The court convicted Dunn of driving under the influence, second offense, with refusal to submit to a chemical test. The court ordered the preparation of a presentence investigation report, including a substance abuse evaluation, for review at a later sentencing hearing. After the sentencing hearing, the court entered an order sentencing Dunn to imprisonment in the county jail for 120 days; suspending his motor vehicle operator's license for 3 years; allowing him to apply for an interlock device after 45 days; and requiring him to abstain from alcohol use for 60 days, during which time the court directed him to wear a continuous alcohol monitoring device.

Dunn appeals.

ASSIGNMENTS OF ERROR

Dunn assigns that the district court erred in overruling his motion to suppress.

STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protection is a question of law that an appellate court reviews independently of the trial court's determination. *State v. Thompson*, 301 Neb. 472, 919 N.W.2d 122 (2018).

ANALYSIS

*Motion to Suppress.*

Dunn assigns that the district court erred in denying his motion to suppress, which alleged that law enforcement unconstitutionally obtained evidence at the checkpoint of him driving under the influence of alcohol. As discussed below, we find that the checkpoint complied with both the U.S. Constitution and the Nebraska Constitution, and thus, the court properly denied Dunn's motion.

The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect individuals against unreasonable searches and seizures by the government. *State v. Sievers*, 300 Neb. 26, 911 N.W.2d 607 (2018). A vehicle stop at a highway checkpoint effectuates a "seizure" within the meaning of the Fourth Amendment. *State v. Piper*, 289 Neb. 364, 855 N.W.2d 1 (2014). Whether a checkpoint is lawful thus depends upon whether it is reasonable. *Id.* Reasonableness of seizures that are less intrusive than a traditional arrest involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty. *Sievers, supra*.

The public interest served by a checkpoint is assessed according to its primary purpose. See *Piper, supra*. A court does not look at the subjective intent of individual law enforcement officers administering the checkpoint, but examines purpose "'at the programmatic level.'" *Id.* at 376, 855 N.W.2d at 10. Checkpoints designed to police the border, to ensure roadway safety, and to prevent drunken driving are constitutionally permissible. See *id.* The U.S. Supreme Court, however, has declined to approve checkpoints "whose primary purpose is ultimately

indistinguishable from the general interest in crime control." *Indianapolis v. Edmond*, 531 U.S. 32, 44, 121 S. Ct. 447, 148 L. Ed. 2d 333 (2000). See, also, *Delaware v. Prouse*, 440 U.S. 648, 659 n.18, 99 S. Ct. 1931, 59 L. Ed. 2d 660 (1979).

The intrusion effectuated by a checkpoint can, depending on the circumstances, be slight and minimal. *Piper, supra*. However, even where a checkpoint effectuates only a limited intrusion, it cannot subject motorists to "'the unbridled discretion of law enforcement officials.'" *Id.* at 377, 855 N.W.2d at 11. A central concern in balancing these competing considerations in a variety of settings has been to assure that an individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field. *State v. Crom*, 222 Neb. 273, 383 N.W.2d 461 (1986). Further, the Nebraska Supreme Court has stated "[w]hen the State Patrol disregards its own rules, the troopers in the field are free to act with unconstrained discretion." *State v. One 1987 Toyota Pickup*, 233 Neb. 670, 447 N.W.2d 243 (1989), *overruled on other grounds, State v. Spotts*, 257 Neb. 44, 595 N.W.2d 259 (1999).

The *Piper* case is instructive. The defendant in that case was stopped at a vehicle checkpoint, where she was discovered to be driving under the influence of alcohol. The checkpoint was part of an alcohol-related enforcement program. The troopers who performed the checkpoint followed both a plan that their supervisors approved and an official State Patrol policy that considered the constitutional privacy limitations on checkpoints. The trial court denied the defendant's motion to suppress evidence from the checkpoint and convicted her of driving under the influence.

On appeal, the defendant argued that to protect drivers' privacy interests from the unfettered discretion of law enforcement, a checkpoint plan must be conceived at the policymaking level. The Nebraska Supreme Court rejected this argument. The court stated that instead of focusing on who created the plan, a court should consider "whether the checkpoint was approved and whether it was operated in accordance with the approved plan and State Patrol policy, as well as any other circumstances that may indicate the exercise of unfettered discretion." *Piper*, 289 Neb. at 380, 855 N.W.2d at 13.

The court in *Piper* observed that the supervisor who approved the plan was not involved in the checkpoint. The established plan outlined the date, time, location, and duration of the checkpoint as well as the pattern for placement of signs and flares. Further, the checkpoint plan was made by a neutral source, a State Patrol sergeant who worked in a supervisory capacity, in compliance with State Patrol policy. The officers who conducted the checkpoint did not formulate the plan or the State Patrol policy. As a result, the court found that the checkpoint was not an unreasonable search and seizure. *Piper, supra*.

The facts in the present case are similar to *Piper*. The record shows that the checkpoint was designed to comply with the Nebraska State Patrol policy on vehicle checkpoints. There was no direct testimony about who decided to perform the checkpoint in this case, but Horak testified that, generally, one of her supervisors decides the location and time for a checkpoint. Although his signature is not on the plan, the plan showed that it was approved by Buxbaum, Horak's supervisor. None of the troopers involved in the checkpoint chose the location and time; rather, they performed the checkpoint according to their assignment. Taken together, this evidence is sufficient to support the conclusion that, in compliance with the State Patrol policy and constitutional requirements, the person who designed the checkpoint plan was not involved in conducting the operation in the field.

Contrary to Dunn's argument, the law does not require that the checkpoint plan be approved at the policymaking level. Instead, the checkpoint must be operated in accordance with "an approved plan that conformed to State Patrol policy." See *id.* at 380, 855 N.W.2d at 13. The evidence supports that the checkpoint in question satisfied these requirements.

Moreover, the intrusion in this case was minimal. Bulke testified that the troopers were instructed to check only the licenses, registration, and insurance of the vehicles that passed through the intersection. The troopers stopped all traffic that passed through the intersection at the time of the checkpoint and requested they produce the above documents. Drivers were not asked to exit their vehicles unless a law violation was observed. There is no evidence that the troopers treated Dunn differently than the other traffic driving through the intersection. In view of the evidence, we conclude that the troopers did not act with "unbridled" or "unfettered" discretion under *Piper, supra*, and *Crom, supra*.

Dunn argues that the primary purpose of the October 21, 2016, vehicle checkpoint was ultimately indistinguishable from law enforcement's general interest in crime control, and therefore, it was impermissible under the Fourth Amendment. He points out that because Baxbaum did not testify, the record contains no evidence about what governmental interests the vehicle checkpoint performed.

While Horak admitted that she did not know why the location and time for the October 21, 2016, checkpoint was selected, she testified that State Patrol supervisors select locations for checkpoints that have issues with vehicle accidents, drunk driving, and any type of criminal activity. Bulke testified that he was instructed to check license, registration, and proof of insurance, which is integral to roadway safety. Thus, the record supports the conclusion that the purpose of the checkpoint was to ensure roadway safety, which the U.S. Supreme Court has specifically stated is a permissible purpose under the Fourth Amendment. See *Edmond, supra*. We conclude that the district court was not clearly erroneous in finding that the checkpoint was conducted for a valid purpose, which was more than a general interest in crime control. Weighing the public interest served and the interference with individual liberty, we conclude that the checkpoint was reasonable under the Fourth Amendment.

Dunn also argues that the checkpoint was improper because a game and parks official was present, which presence was not part of the Nebraska State Patrol approved plan. We disagree. The State Patrol's policy specifically allows troopers to perform vehicle checkpoints "in cooperation with other law enforcement agencies following this or comparable policies." Dunn has presented no evidence to show that the game and parks official did not follow the State Patrol policy or prevented the troopers from executing the approved plan. Further, we find no evidence in the record showing that the presence of game and parks official violated Dunn's reasonable expectation of privacy or caused the checkpoint to be unreasonable under the Fourth Amendment.

In view of the above we find the district court did not err in denying Dunn's motion to suppress.

*Statutory Sentence.*

We note that the district court inadvertently failed to include a $1,000 fine in Dunn's sentence as required under Neb. Rev. Stat. § 60-6,197.03 (Cum. Supp. 2016).

An appellate court always reserves the right to note plain error that was not complained of at trial or on appeal. *State v. Torres*, 300 Neb. 694, 915 N.W.2d 596 (2018). Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Thompson*, 301 Neb. 472, 919 N.W.2d 122 (2018). A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review. *State v. Kantaras*, 294 Neb. 960, 885 N.W.2d 558 (2016).

Section 60-6,197.03 provides the sentence for aggravated driving under the influence, second offense, which, in relevant part, is as follows:

(5) If such person has had one prior conviction and, as part of the current violation, had a concentration of fifteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his or her blood or fifteen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his or her breath or refused to submit to a test as required under section 60-6,197, such person shall be guilty of a Class I misdemeanor, and the court shall, as part of the judgment of conviction, order payment of a one-thousand-dollar fine and revoke the operator's license of such person for a period of at least eighteen months but not more than fifteen years from the date ordered by the court and shall issue an order pursuant to section 60-6,197.01. . . . The court shall also sentence such person to serve at least ninety days' imprisonment in the city or county jail or an adult correctional facility.

Dunn's sentence does not include the $1,000 fine that § 60-6,197.03(5) requires. We, therefore, modify his sentence to include it.

## CONCLUSION

The district court did not err in denying Dunn's motion to suppress; and in compliance with § 60-6,197.03(5), we modify Dunn's sentence to include a $1,000 fine.

AFFIRMED AS MODIFIED.