Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/05/2020 08:08 AM CDT

**State of Nebraska, appellee, v.
Crystal M. Marks, appellant.**

___ N.W.2d ___

Filed April 28, 2020.    No. A-18-1160.

1. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction.

2. **Theft: Value of Goods: Proof.** Under Neb. Rev. Stat. § 28-518(8) (Reissue 2016), value is an essential element of the offense of theft which must be proved beyond a reasonable doubt.

3. **Criminal Law: Evidence.** The owner of chattel may testify as to its value in a criminal case.

4. **Witnesses: Juries: Appeal and Error.** The credibility and weight of witness testimony are for the jury to determine, and witness credibility is not to be reassessed on appellate review.

5. **Effectiveness of Counsel: Constitutional Law: Statutes: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement.

6. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise the issue will be procedurally barred.

7. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668,

104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

8. **Effectiveness of Counsel: Records: Appeal and Error.** An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice.

9. **Appeal and Error.** Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

10. **Criminal Law: Sentences.** A person cannot be found guilty of or sentenced for a crime greater than that with which he or she was charged.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed in part, and in part reversed and remanded for resentencing.

David J. Tarrell, of Berry Law Firm, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Crystal M. Marks was convicted by a jury of a certificate of title violation and theft by unlawful taking. The district court subsequently sentenced Marks to a total of 4 to 6 years' imprisonment. On appeal, Marks challenges only her conviction for theft by unlawful taking. Specifically, she asserts that there was insufficient evidence presented at trial to prove the value of the item taken. In addition, she asserts that she received ineffective assistance of trial counsel because counsel failed to object to the victim's testimony regarding value. Upon our review, we affirm Marks' conviction for theft by unlawful taking. However, we find that the court committed plain error in its sentencing of Marks for that conviction. Although

the second amended information charged Marks with theft by unlawful taking ($1,500 to $5,000), a Class IV felony, at sentencing, the district court treated the theft by unlawful taking charge as a Class IIA felony. Upon our review, we affirm Marks' convictions for a certificate of title violation and for theft by unlawful taking. However, we reverse her sentences for those convictions and remand the cause with directions to resentence Marks in accordance with this opinion.

## II. BACKGROUND

The State filed an amended information charging Marks with a certificate of title violation, a Class IV felony, pursuant to Neb. Rev. Stat. § 60-179 (Reissue 2010) and with theft by unlawful taking, $5,000 or more, a Class IIA felony, pursuant to Neb. Rev. Stat. §§ 28-511 and 28-518(1) (Reissue 2016). The charges against Marks stem from an incident which occurred in November 2016.

On November 16, 2016, Stephen Gibson-Daniel (Stephen) was at home in his apartment in Lincoln, Nebraska, when he was notified by one of his neighbors that a tow truck was in the parking lot of the apartment complex and was attempting to tow away his 2004 Nissan Titan pickup truck. Stephen spoke with the driver of the tow truck. He informed the driver that the pickup truck belonged to him and that he did not want it towed. The tow truck driver left the parking lot without Stephen's pickup truck. The next day, a tow truck again appeared in the parking lot of the apartment complex in order to tow away the pickup truck. Stephen again successfully prevented the towing of his truck.

On November 18, 2016, for the third day in a row, a tow truck arrived in Stephen's apartment complex parking lot in order to tow away his pickup truck. This time, Marks was with the tow truck. Marks indicated that she and/or her boyfriend had recently purchased the pickup truck from Stephen and that she wished it to be towed from the parking lot. Stephen disputed this claim. He denied selling Marks or anyone else the

pickup truck, and he indicated he had met Marks on only one prior occasion, when he gave her a ride to her mother's house after she said she was stranded at his apartment complex. When Stephen attempted to enter his pickup truck to obtain documentation of his ownership to show to the tow truck driver, he claimed that Marks grabbed for his keys, his keyring broke, and she took one of the two keys he possessed for the pickup truck. Ultimately, the tow truck driver left the parking lot without towing the pickup truck.

Marks then sought the assistance of police in order to obtain possession of the pickup truck. She showed police a certificate of title for the pickup truck which had recently been issued in her name. Police returned to Stephen's apartment complex with Marks, where they spoke with Stephen. He again denied selling the truck to Marks or to anyone else. After Stephen had seen Marks with the tow truck, he had checked his glove box and discovered that the title to his truck, along with his registration, his insurance card, and his roadside assistance information, had been stolen. He surmised that Marks took this documentation when he had given her a ride a few weeks prior. On the way to Marks' mother's house, Stephen had stopped at a gas station to purchase a soda. Marks was alone in his truck for approximately 5 minutes. Stephen explained that the title to the pickup truck was in his glove box because he had planned to meet up with his ex-wife so that she could sign the truck over to him, as he had been awarded the truck in their recent divorce.

Because Marks possessed a certificate of title for the pickup truck, police directed Stephen to turn over all of the keys to the truck to Marks, to clean out his belongings from the truck, and to turn the truck over to Marks. Marks was unable to start the pickup truck, so it was ultimately towed away. Two days later, Marks sold the pickup truck to her uncle, Richard Macku, for $1,500 because "[s]he just wanted the money." Macku has retained possession of the pickup truck since that time.

Stephen subsequently filed a police report claiming that Marks had perpetrated a fraud by obtaining a title in her name. Both Stephen and his ex-wife, who was also on the title to the pickup truck, indicated that they had not signed the title which purported to sell the truck to Marks. They claimed that the signatures on the title were not theirs. After an investigation, police cited Marks.

Prior to trial being held on the charges alleged in the amended information, Marks filed a plea in abatement, alleging that "there was insufficient evidence adduced at the preliminary hearing to warrant a bindover of count 2 (theft) in this case." After a hearing, the district court sustained, in part, Marks' plea in abatement. The court explained:

> The Amended Information alleges that [Marks] took or exercised control over movable property of another with intent to deprive him or her thereof, having a value of five thousand dollars or more. The evidence adduced at the preliminary hearing is consistent with the allegations that [Marks] exercised control over a vehicle which belongs to another. There is sufficient evidence to support an inference that [Marks] obtained the title to the vehicle fraudulently, that she took possession of the vehicle, and that she then sold it to someone else. However, the only evidence as to the value of the vehicle is [Marks'] claim that she purchased it for $1,500 and Officer Pinnow's Kelley Blue Book search which attributed a value of $4,000 to the same make and year of the vehicle. Although the evidence in a preliminary hearing need not prove the crime charged beyond a reasonable doubt there must be evidence for this Court to find probable cause that all elements of the crime exist.
>
> Accordingly, the State has met its requisite burden to prove that there is probable cause to believe the crime of Theft by Unlawful Taking under Neb. Rev. Stat. § 28-511 has occurred and that [Marks] committed the crime. However, the evidence of the value of the vehicle

provides probable cause for the lesser included offense of
Theft by Unlawful Taking, $1,500 - $5,000, a Class IV
felony, not Theft by Unlawful Taking, $5,000 or more, a
Class IIA Felony.

(Emphasis in original.)

Given the district court's decision to sustain, in part, the
plea in abatement, the State filed a second amended informa-
tion. In the second amended information, it again charged
Marks with a certificate of title violation, but it amended the
second count to charge Marks with theft by unlawful taking,
$1,500 to $5,000, a Class IV felony, pursuant to §§ 28-511 and
28-518(2).

In September 2018, a jury trial was held on the charges
alleged in the second amended information. Ultimately, the
jury found Marks guilty of both a certificate of title violation
and theft by unlawful taking. The jury found that the value
of Stephen's pickup truck at the time of the theft was $7,000.
The district court sentenced Marks to 1 to 1 year's imprison-
ment on her conviction for a certificate of title violation and
to 3 to 5 years' imprisonment on her conviction for theft by
unlawful taking. The court ordered the sentences to run con-
secutively to one another.

Marks appeals here.

### III. ASSIGNMENTS OF ERROR

On appeal, Marks asserts that there was insufficient evi-
dence presented at trial to prove the value of the 2004 Nissan
pickup truck. She also asserts that her trial counsel pro-
vided ineffective assistance when counsel failed to object to
Stephen's testimony regarding his opinion of the value of
the truck.

### IV. ANALYSIS

#### 1. Sufficient Evidence of Value

Marks asserts that the evidence presented at trial was insuf-
ficient to prove the value of the 2004 Nissan pickup truck.
Specifically, Marks alleges that "there is nothing in the record,

other than the victim's unreliable and irrelevant guess, to prove that the vehicle was worth $4000 to $5000." Brief for appellant at 12. Upon our review, we find the evidence presented at trial was sufficient to support Marks' conviction for theft by unlawful taking.

### (a) Standard of Review

[1] In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. McPherson*, 266 Neb. 715, 668 N.W.2d 488 (2003); *State v. Shipps*, 265 Neb. 342, 656 N.W.2d 622 (2003).

### (b) Evidence Presented at Trial

At trial, Stephen testified about the condition of the pickup truck and offered his opinion about its value at the time of the theft in November 2016. Stephen described the pickup truck as a 2004 green, four-door Nissan Titan pickup truck. The truck's features included four-wheel drive, an "off-road package," an ability to tow, a leather steering wheel, and a liner in the truck bed. He purchased the truck from a dealership in 2008 for "[j]ust over $17,000." Stephen estimated that in November 2016, the pickup truck had 100,000 miles. Stephen also described some minor problems with the pickup truck, including that the compact disc player was not in working order, that there was a rust spot near the driver's side rear tire, and that there was a "coin console" in the dashboard that was "kind of broken." The pickup truck had previously been in three minor accidents, but any damage sustained in those accidents had been fully repaired. Stephen denied that the pickup truck had any water or flood damage or that it had any major or operational issues. Stephen testified that he drove the pickup truck every day because it was his only vehicle.

When questioned about the exact value of the pickup truck in November 2016, Stephen explained that a few months prior to the trial, he had looked at a similar pickup truck with 148,000 miles. The vehicle was priced at "around $11,000." Stephen estimated that based upon his comparison between his pickup truck and the one he looked at recently, that he would estimate his pickup truck to have been worth about $8,000 at the time of the theft. Stephen indicated that he believed that his pickup truck had been in good condition, but even if it was considered to be in "fair" condition, it would have been worth $4,000 to $5,000.

Stephen further explained why he believed the pickup truck would not start when Marks attempted to drive it away on November 18, 2016. He remembered that one of the doors to the vehicle had been left ajar after his first encounter with Marks and the tow truck on the afternoon of November 18. He opined that because the door was left ajar, the battery of the vehicle may have died. Alternatively, Stephen believed it was possible that Marks may have attempted to start the vehicle with the key which only opened the vehicle's doors, but which would not start the ignition. In any event, Stephen indicated that he had driven the vehicle on November 17 and that it was operating fine at that time.

Macku also provided testimony regarding the value of the pickup truck. When Macku was originally approached by Marks to purchase the truck, Marks told him that the price was $8,000. Macku testified that he believed $8,000 was too much to pay for the truck, so he offered Marks $2,500. However, after he moved the truck to his home and began to inspect it, he discovered that there was "so much wrong with it" that he only paid Marks $1,500. Macku listed the problems with the pickup truck at the time he received it. Those problems included having two flat tires on the passenger side, bad transmission fluid, a leaky radiator, a "busted" dashboard, windows that would not roll up or down, and leaking in the back end of the vehicle. Macku described the truck as "pretty

well tore up, and pretty well stripped, too." The biggest problem with the truck, however, was that it would not start even after Macku changed the battery. Macku indicated that, apparently, the vehicle's "computer [had] locked up," possibly due to having been towed. Macku testified that he has put at least $5,000 in parts toward fixing the truck. He indicated that when he purchased the truck in November 2016, it had about 100,000 miles on it. Now, the truck has 112,000 or 113,000 miles on it. Macku testified that his ex-wife drives the truck on a regular basis.

### (c) Analysis

[2] Section 28-511(1) provides, "A person is guilty of theft if he or she takes, or exercises control over, movable property of another with the intent to deprive him or her thereof." Under § 28-518(8), value is an essential element of the offense of theft which must be proved beyond a reasonable doubt. See, also, *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002). In the second amended information, the State alleged that the value of the pickup truck was $1,500 to $5,000. Ultimately, the jury found that the pickup truck was worth $7,000 at the time of the theft. On appeal, Marks asserts that there was insufficient evidence presented at trial to prove the value of the pickup truck. Upon our review, we find that the State met its burden of proof with regard to the value of the truck.

[3] It has long been the rule in Nebraska that the owner of chattel may testify as to its value in a criminal case. *In re Interest of Zoie H.*, 304 Neb. 868, 937 N.W.2d 801 (2020). Here, Stephen testified both about the condition of the pickup truck at the time of the theft and about his opinion of the value of the truck. Stephen believed that the pickup truck was in good condition, because there were no major operational problems with it and he was able to drive it every day with no issues. Stephen also testified about the features on the truck. Ultimately, Stephen testified that, based upon his knowledge of the pickup truck and his comparison of it to a similar vehicle,

he believed the pickup truck to have been worth about $8,000 in November 2016. Stephen indicated that at a minimum, the truck would have been worth $4,000 or $5,000. Contrary to Stephen's testimony, Macku testified that he purchased the truck from Marks in November 2016 for $1,500 and that, at that time, the truck was probably worth only $1,500 for someone, like him, who could fix it themselves.

[4] Based upon the evidence presented at trial, we find that the State presented sufficient evidence to prove the value of the pickup truck. Essentially, the evidence indicated that the value of the truck was somewhere between $1,500, the amount Macku purchased it for, and $8,000, the value attributed to the truck by Stephen. We note that during oral argument, Marks' counsel conceded that there was sufficient evidence presented during the trial to establish that the value of the pickup truck was at least $1,500. The jury clearly found Stephen's testimony regarding the value of the truck to be credible, because it found the truck was worth $7,000 in November 2016. The credibility and weight of witness testimony are for the jury to determine, and witness credibility is not to be reassessed on appellate review. *State v. Archie*, 273 Neb. 612, 733 N.W.2d 513 (2007). Our task is limited to determining whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the pickup truck had some value. Based on the evidence summarized above, we conclude it could.

## 2. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

### (a) Standard of Review

[5] Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. See *State v. Castillo-Zamora*, 289 Neb. 382, 855 N.W.2d 14 (2014). We determine as a matter of law whether

the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. See *id*.

### (b) Analysis

[6] Marks is represented in this direct appeal by different counsel than the counsel who represented her at trial. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise the issue will be procedurally barred. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Mendez-Osorio*, 297 Neb. 520, 900 N.W.2d 776 (2017). The determining factor is whether the record is sufficient to adequately review the question. *Id*.

[7] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015).

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. See *State v. Casares, supra*. General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review. *Id*.

[8] Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those

instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error. *Id*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id*. See, also, *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

In her brief on appeal, Marks asserts that her trial counsel was ineffective in failing to object to Stephen's testimony about the value of the pickup truck. She asserts that counsel should have objected to Stephen's testimony as being not relevant based upon the Nebraska Supreme Court's holding in *State v. Roche, Inc.*, 246 Neb. 568, 520 N.W.2d 539 (1994). Based upon our reading of the holding in *State v. Roche, Inc., supra*, we find Marks' contention to be misplaced.

In *State v. Roche, Inc., supra*, the Supreme Court analyzed how the value of an item involved in a theft should be calculated when a victim was deceived into paying more money for an item than it was worth due to a defendant's fraud. The defendant had sold two copiers with the meters rolled back, thereby deceiving the buyers with regard to the value of the machines. The Supreme Court held that the property obtained through deception was the amount of money received for the copiers. Thus, the value of that property was simply the amount each victim paid for the copier, regardless of whether the victim had received any value from the copier. The court explained that "the degree of the crime must be measured by the value of the property obtained by the defendant as a result of the deception and that the value of any property received by the victim is immaterial." *Id*. at 571, 520 N.W.2d at 540.

The situation in *State v. Roche, Inc., supra*, is unlike the situation presented by this case. First, Marks was convicted

of theft by unlawful taking and not theft by deception. Marks took or exercised control over a pickup truck that belonged to Stephen. Unlike the defendant in *State v. Roche, Inc., supra*, she did not deceive Stephen into paying more for an item than the item was actually worth. Thus, the calculation of value discussed in *State v. Roche, Inc., supra*, is entirely different than the calculation of value in this case. The value of the pickup truck is essentially what the pickup truck was worth at the time it was stolen. Stephen's testimony was highly relevant to that issue and was properly permitted in evidence because, as we stated above, an owner is permitted to testify regarding an item's value. See *In re Interest of Zoie H.*, 304 Neb. 868, 937 N.W.2d 801 (2020).

Given that Stephen's testimony regarding the condition and the value of the pickup truck at the time of the theft was relevant to the issue of the pickup truck's ultimate valuation and given that such testimony was proper, we find that Marks' trial counsel did not provide deficient performance in failing to object to such testimony. Counsel had no basis to object to Stephen's testimony regarding the value of the truck. Therefore, trial counsel did not perform in a deficient manner.

### 3. PLAIN ERROR IN SENTENCING

#### (a) Standard of Review

[9] Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process. *State v. Thompson*, 301 Neb. 472, 919 N.W.2d 122 (2018).

#### (b) Additional Background

The State originally charged Marks with theft by unlawful taking of an item with a value of $5,000 or more. This charge constituted a Class IIA felony pursuant to § 28-518(1). A Class IIA felony is punishable by up to 20 years' imprisonment.

Neb. Rev. Stat. § 28-105 (Reissue 2016). However, after the district court granted, in part, Marks' plea in abatement, the State amended the theft charge to reflect that Stephen's pickup truck was valued at $1,500 to $5,000. The amended theft charge constituted a Class IV felony. See § 28-518(2). A Class IV felony is punishable by up to 2 years' imprisonment and 12 months of postrelease supervision. § 28-105. Ultimately, the jury found that the value of Stephen's pickup truck at the time of the theft was $7,000.

At the start of the sentencing hearing, the district court explained to Marks the convictions for which she was being sentenced: "[You] hav[e] been found guilty of Count 1, certificate of title violation, a Class 4 felony; and Count 2, theft by unlawful taking, $5000 or more, a Class 2A felony." After her counsel made some remarks regarding an appropriate sentence, Marks expressed to the court some confusion about her convictions. She stated, "To be honest, Your Honor, I'm — I'm confused about my charges. I thought I was being charged with two Felony 4s, and today I hear you say it's a Felony 2 and a Felony 4." After being prompted by the court, the State explained the gradation of the theft conviction as follows:

> [M]y understanding is it's based on the jury's findings, the — I mean, the preliminary hearing evidence was 4000, and so that's why it was — the count was amended, I think, in the Second Amended Complaint, to the 1500 to 5000; but ultimately, you know, it's the State's position that the jury decides the value, which then determines the classification or the punishment.
>
> Based on that value in this case, the jury found the vehicle — that the theft occurred and that the value of the property that was stolen was $7000, which is more than the $5000. And so I believe that then means that it's the 2A or can be punished up to the 20 years in prison.

The district court continued to treat Marks' theft conviction as a Class IIA felony and, accordingly, sentenced her to

3 to 5 years' imprisonment for that conviction. Such sentence is outside of the sentencing range for a Class IV felony. On appeal, Marks does not challenge the district court's decision to sentence her on a Class IIA felony. However, during oral argument, the State conceded that Marks' sentence for her theft conviction constituted plain error.

### (c) Analysis

[10] Based on the foregoing record, it appears that the district court may have considered the value of the item stolen to be a sentencing factor rather than an element of the crime of theft. However, § 28-518(8) clearly delineates value as "an essential element of the offense that must be proved beyond a reasonable doubt." See, also, *State v. Gartner*, 263 Neb. 153, 638 N.W.2d 849 (2002). We find that the district court committed plain error in sentencing Marks on a Class IIA felony when she was charged with a Class IV felony. Even though the jury found that the value of the pickup truck was $7,000, which would have placed the theft offense into the Class IIA category pursuant to § 28-518(1), the State's second amended information charged Marks with a Class IV felony. There is nothing in our record to suggest that the operative information was ever amended or otherwise superseded. Simply stated, Marks could not be found guilty of or sentenced for a crime greater than that with which she was charged. As such, the district court committed plain error in treating Marks' theft by unlawful taking conviction as a Class IIA felony and sentencing her to 3 to 5 years' imprisonment. Marks was charged with and convicted of theft by unlawful taking, a Class IV felony. A Class IV felony is punishable by up to 2 years' imprisonment and 12 months of postrelease supervision. The sentence imposed by the district court was clearly not within these statutory limits. We reverse, and remand with regard to Marks' sentence for theft by unlawful taking. On remand, Marks should be resentenced such that the new sentence is within the statutory confines for a Class IV felony.

Given our finding that Marks was charged with and convicted of theft by unlawful taking, a Class IV felony, we must also reverse the district court's sentence for Marks' conviction for a certificate of title violation, also a Class IV felony.

The district court sentenced Marks to an indeterminate sentence of 1 to 1 year's imprisonment on her conviction for a certificate of title violation. Pursuant to Neb. Rev. Stat. § 29-2204.02 (Reissue 2016), this sentence would have been proper had Marks' conviction for theft by unlawful taking constituted a Class IIA felony. Section 29-2204.02(4) provides in relevant part:

For any sentence of imprisonment for a Class III, IIIA, or IV felony for an offense committed on or after August 30, 2015, imposed consecutively or concurrently with . . . (b) a sentence of imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony, the court shall impose an indeterminate sentence within the applicable range in section 28-105 that does not include a period of post-release supervision . . . .

However, Marks' conviction for theft by unlawful taking constituted a Class IV felony. As such, each of her sentences for a Class IV felony is governed by the language in § 29-2204.02(1):

[I]n imposing a sentence upon an offender for a Class III, IIIA, or IV felony, the court shall:

(a) Impose a determinate sentence of imprisonment within the applicable range in section 28-105; and

(b) Impose a sentence of post-release supervision, under the jurisdiction of the Office of Probation Administration, within the applicable range in section 28-105.

The district court's sentence for Marks' conviction for a certificate of title violation did not comport with the requirements delineated in § 29-2204.02(1). The court did not impose a determinate sentence, nor did it impose any period of postrelease supervision. As such, we must remand Marks'

sentence for the certificate of title violation with directions to resentence her in accordance with § 29-2204.02(1).

## V. CONCLUSION

Upon our review, we affirm Marks' convictions for a certificate of title violation and for theft by unlawful taking. However, we reverse her sentences for those convictions and remand the cause with directions to resentence Marks in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR RESENTENCING.