STATE OF NEBRASKA, APPELLEE, V. DERALD B. WILTSHIRE, APPELLANT.

491 N.W.2d 324

Filed October 30, 1992.   Nos. S-91-639, S-91-640.

818

Dennis R. Keefe, Lancaster County Public Defender, for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

WHITE, J.

Derald B. Wiltshire appeals the district court affirmance of his conviction for third-offense driving while intoxicated (DWI), in violation of a Lincoln city ordinance. Wiltshire was sentenced under the city recidivist ordinance to 6 months in jail, a $500 fine, and a 15-year suspension of his operator's license.

Wiltshire was arrested on August 31, 1990, after police observed him driving erratically. Wiltshire failed a Breathalyzer test and was charged with DWI, in violation of Lincoln Mun. Code § 10.52.020. During trial in Lancaster County Court, Wiltshire requested a jury trial. The court denied the motion and convicted Wiltshire of DWI.

At the enhancement hearing, the State offered into evidence two of Wiltshire's prior DWI convictions, seeking to enhance the present conviction to a third offense. Wiltshire's counsel

objected to the offer of a 1982 guilty-plea conviction on the grounds that the conviction was constitutionally invalid. Counsel argued that nothing in the record of the 1982 proceeding indicated that Wiltshire had been informed of or had knowingly, intelligently, and voluntarily waived his rights to confrontation of witnesses and freedom from self-incrimination—two of the "*Boykin* rights" guaranteed an accused by *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). Wiltshire was represented by counsel when he pled guilty in the 1982 DWI proceeding.

In addition to objecting to the proffered conviction at the enhancement hearing, Wiltshire's counsel filed a "Petition for Relief in a Separate Proceeding," which attacked the validity of the 1982 conviction. The separate petition asked the county court to declare the 1982 conviction invalid and to refrain from using the 1982 conviction for enhancement purposes.

The county court overruled the objections and overruled and dismissed the separate petition. The court found Wiltshire guilty of third-offense DWI, based in part on enhancement from the 1982 conviction. Wiltshire was sentenced to 6 months in jail, a $500 fine, and a 15-year suspension of his operator's license. The district court affirmed.

Wiltshire assigns as error that the district and county courts erred in (1) denying a jury trial for a conviction involving a sentence of 6 months in jail and a 15-year license suspension; (2) failing to find that the 1982 conviction was constitutionally invalid because the 1982 record does not indicate that Wiltshire was adequately informed of his rights or that he knowingly, intelligently, and voluntarily waived those rights before pleading guilty; (3) failing to allow Wiltshire to challenge the constitutional validity of the 1982 conviction at the enhancement proceeding; and (4) failing to set aside the 1982 conviction and allowing the 1982 conviction to be used to enhance the 1990 conviction to a third offense.

A conflict exists between Nebraska law and federal law as to when a jury trial is mandated for a DWI case. This court has previously held that jury trials are not required in DWI cases, even when the sentence is enhanced due to prior convictions. E.g., *State v. Richter*, 225 Neb. 871, 408 N.W.2d 324 (1987)

(holding no jury trial required for third-offense DWI with a sentence of 180 days in jail, $500 fine, and 15-year license suspension); *State v. Lynch*, 223 Neb. 849, 394 N.W.2d 651 (1986) (holding no jury trial required for second-offense DWI with a sentence of 30 days in jail, $500 fine, and 1-year license suspension).

This court's denial of jury trials in enhanced DWI cases is based on Neb. Rev. Stat. § 25-2705 (Reissue 1989), which provides, in pertinent part: "Either party to any case in county court, *except criminal cases arising under city or village ordinances, [and] traffic infractions* . . . may demand a trial by jury." (Emphasis supplied.) We have held that this provision does not provide the county court with discretion to grant a jury trial in cases involving municipal ordinance violations. *State v. Blair*, 230 Neb. 775, 433 N.W.2d 518 (1988).

Since our decision in *State v. Richter, supra*, however, new federal case law that conflicts with our Nebraska decisions has arisen on the jury issue. In *Blanton v. North Las Vegas*, 489 U.S. 538, 109 S. Ct. 1289, 103 L. Ed. 2d 550 (1989), the U.S. Supreme Court clarified the federal constitutional right to a jury trial in a DWI case.

In *Blanton*, one defendant, after being denied a jury trial, was convicted of first-offense DWI. The Nevada sentencing statute provided for a maximum of 6 months in jail, a $1,000 fine, and a 90-day license suspension. The Supreme Court affirmed the judgment of the Nevada courts, holding that this situation did not mandate a jury trial. The Court reasoned that jury trials are required only if the offense is regarded as "serious." The best indication of the seriousness of the offense is the maximum penalty prescribed by the legislature. The Court noted that offenses carrying maximum periods of incarceration of 6 months or less are *presumed* to be petty. However, the Court went on to state:

> A defendant is entitled to a jury trial in such circumstances [where the maximum prison term for the offense is 6 months or less] only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination

that the offense in question is a "serious" one. 489 U.S. at 543.

Based on the language in *Blanton*, the U.S. Court of Appeals for the Eighth Circuit granted habeas relief to Richter (from *State v. Richter, supra*), holding that a 15-year license suspension sufficiently indicates that the Legislature considers third-offense DWI "serious." *Richter v. Fairbanks*, 903 F.2d 1202 (8th Cir. 1990). The Eighth Circuit concluded that Richter was entitled to a jury trial and that § 25-2705 (then Neb. Rev. Stat. § 24-536 (Reissue 1985)) was unconstitutional because it denied him this right.

The 6th Amendment right to trial by jury applies to the states through the 14th Amendment to the U.S. Constitution. *Duncan v. Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968). A review of *Blanton* and *Richter v. Fairbanks* convinces us that Nebraska law no longer comports with federal constitutional principles in this area. We believe that, based on our Legislature's dealings with the drunk driving problem, the Eighth Circuit properly applied the *Blanton* "seriousness" test to this situation. We therefore follow that reasoning and overrule our decision in *State v. Richter, supra*, to the extent it is inconsistent with our holding today.

The "seriousness" with which the legislature regards an offense dictates whether the offender is entitled to a jury trial. *Blanton, supra*. Four years before *Blanton* we stated, "We have no difficulty concluding, as did the Legislature, that drunk driving is a serious offense, particularly when the defendant has previously committed the same act." *State v. Michalski*, 221 Neb. 380, 394, 377 N.W.2d 510, 520 (1985). We are no less convinced today. The imposition of a 15-year suspension of driving privileges is such a significant additional penalty that it clearly shows serious legislative concern about this offense.

Neb. Rev. Stat. §§ 39-669.07(2)(c) and 39-669.08(4)(c) (Cum. Supp. 1990) require a 15-year license suspension for anyone convicted of third-offense DWI (at least three convictions within the preceding 10 years) under § 39-669.07, § 39-669.08, or any municipal ordinance enacted pursuant to those sections. We now hold that any such defendant is constitutionally entitled to trial by jury. Section 25-2705 is

unconstitutional to the extent that it requires otherwise.

We further hold, however, that a jury trial is required for DWI cases only when the charge is third offense or greater. Sections 39-669.07(2)(b) and 39-669.08(4)(b) require a 1-year license suspension for second-offense DWI. This "additional penalty" will not require a jury trial if the period of incarceration is less than 6 months. Although the second-offense license suspension is twice the maximum incarceration period, the second-offense suspension does not approach the severity of the third-offense suspension, which is *30* times the maximum jail period. A 1-year suspension, like the 90-day suspension dealt with in *Blanton*, is not so far out of line with the period of incarceration as to require a trial by jury.

Wiltshire contends that his 1982 guilty-plea conviction was invalid under *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and that his inability to challenge its use for enhancement violated his due process rights under the U.S. and Nebraska Constitutions. The district court found that the 1982 conviction did not comply with *State v. Tweedy*, 209 Neb. 649, 309 N.W.2d 94 (1981), or *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (1986), Nebraska cases adopting *Boykin*-type requirements for guilty pleas. Despite this finding, the district court determined that it was bound by *State v. Oliver*, 230 Neb. 864, 434 N.W.2d 293 (1989), to uphold the conviction for enhancement purposes because the record showed that Wiltshire was represented by counsel in the 1982 proceeding.

The U.S. Supreme Court delineated the requirements for a valid guilty-plea conviction in *Boykin, supra*. In *Boykin*, the Court held that a guilty plea waives certain important constitutional rights: the right to trial by jury, the privilege against compulsory self-incrimination, and the right to confront one's accusers. The Court stated that this waiver must be knowingly and intelligently made or the waiver is ineffective. Concluding, the Court held that such a waiver of the three constitutional rights could not be presumed from a silent record.

The Supreme Court further clarified the guilty-plea requirements in *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). In *Brady*, the Court stated that in

addition to the plea's being voluntary and intelligent, *Boykin* added "the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily." 397 U.S. at 747-48 n.4. See, also, *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

Nebraska has adopted the *Boykin* requirements and added to them. See, *State v. Irish, supra* (stating that the defendant must be informed of his *Boykin* rights as well as the nature of the charge and the right to counsel); *State v. Tweedy*, 209 Neb. at 655, 309 N.W.2d at 98 (stating, "A voluntary and intelligent waiver of these rights [the same rights listed in *Irish*] must affirmatively appear from the record"). It is clear that Wiltshire's 1982 guilty-plea conviction did not meet these requirements.

In *State v. Tweedy*, we reversed a guilty-plea conviction for failure to comply with *Boykin*. The record in *Tweedy* indicated that the defendant had engaged in a limited dialogue with the court as to the nature of his rights and the consequences of a guilty plea. The defendant answered "Yes" or "No" to the judge's questions regarding the defendant's understanding of his rights, and the plea was accepted. We held the conviction invalid because the record did not disclose that the defendant knew of his three *Boykin* rights, much less that he had voluntarily and intelligently waived them.

The record in Wiltshire's 1982 conviction offers even less evidence of a knowing and intelligent waiver than the record did in *Tweedy*. Tapes allegedly containing discussions between Wiltshire and the trial judge have since been erased. Only a sparse transcript and the trial judge's journal entries are before us.

One journal entry shows that the trial judge asked Wiltshire about the voluntariness of his plea and that Wiltshire's attorney informed the judge that he believed Wiltshire to be acting voluntarily and intelligently. The entry then contains a finding by the judge that the plea was made intelligently, voluntarily, and on the advice of counsel.

The record from Wiltshire's 1982 conviction does not affirmatively disclose a voluntary and intelligent waiver of his

rights as required by *Boykin, Tweedy,* and *Irish.* To an even greater degree than in *Tweedy,* where we found the record insufficient to support the plea, the 1982 record fails to show any meaningful exchange between Wiltshire and his counsel or the trial judge. The record contains no evidence of Wiltshire's understanding of his plea or its voluntariness. Wiltshire's 1982 guilty-plea conviction does not conform to the *Boykin-Tweedy-Irish* requirements and is therefore constitutionally invalid.

As we have determined that Wiltshire's 1982 conviction was invalid, one matter remains: the use of the invalid conviction for enhancement. Wiltshire challenged the use of the 1982 conviction at the enhancement hearing by objection and by filing a "Petition for Relief in a Separate Proceeding." Both requests for relief were denied. Although the district court properly affirmed the overruling of Wiltshire's objection at the enhancement hearing, the district court's denial of relief in the separate proceeding was erroneous.

This court has long recognized the right of criminal defendants to challenge the use of constitutionally invalid convictions for sentence enhancement. In *State v. McGhee,* 184 Neb. 352, 358, 167 N.W.2d 765, 769 (1969), we stated, "[I]n a habitual criminal proceeding a prior conviction is subject to attack on constitutional grounds [if raised in a timely manner]." We have followed U.S. Supreme Court precedent recognizing the right to challenge the use of uncounseled convictions for enhancement. *State v. Smith,* 213 Neb. 446, 329 N.W.2d 564 (1983) (following *Burgett v. Texas,* 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967), and *Baldasar v. Illinois,* 446 U.S. 222, 100 S. Ct. 1585, 64 L. Ed. 2d 169 (1980)).

Like an uncounseled guilty plea, an un-*Boykin*ized plea is also constitutionally invalid. *Boykin, supra.* The broad language used by the Supreme Court in *Burgett, supra,* and *Baldasar, supra,* implies that a proffered enhancement conviction based on an un-*Boykin*ized plea is constitutionally challengeable. To hold otherwise would work a second constitutional violation on the defendant—by allowing an invalid conviction to serve as a predicate for a recidivist conviction.

When the constitutionally invalid conviction is used for enhancement, the violation is effectively renewed. See *Burgett, supra*. Additionally, the use of an invalid conviction to satisfy the requirements of a recidivist statute results in a conviction based on insufficient evidence; i.e., the defendant is convicted without the State's having to prove the validity of the requisite underlying convictions. See, *Smith, supra*; *State v. Crane*, 240 Neb. 32, 480 N.W.2d 401 (1992). While there is a clear right to challenge invalid convictions and a sound rationale behind that right, the more problematic point is the proper method for levying the challenge.

Our past decisions have set forth procedural limitations on a defendant's ability to challenge enhancement convictions. These limitations were described in *State v. Oliver*, 230 Neb. 864, 869-70, 434 N.W.2d 293, 297-98 (1989), where we stated that

it has been the rule in this State that to prove a prior conviction for enhancement purposes, the State need only show that at the time of the prior conviction the defendant had, or waived, counsel. . . .

. . . .

. . .[W]e now expressly disapprove our holding in [*State v. Gonzales*, 218 Neb. 43, 352 N.W.2d 571 (1984),] that a defendant may raise the constitutional invalidity of a prior conviction in an enhancement proceeding, and now hold that such an issue may only be raised in a direct appeal or in a separate proceeding commenced for the express purpose of setting aside the judgment alleged to be invalid.

(Citations omitted.) See, also, *State v. Soe*, 219 Neb. 797, 366 N.W.2d 439 (1985); *State v. Smith, supra* (holding that prior convictions cannot be collaterally attacked at the enhancement hearing).

The limitations have since been clarified. In *State v. Crane, supra,* we noted that *Oliver* does not mean that the State can establish the *constitutional validity* of a prior guilty-plea conviction simply by proving that the defendant had or waived counsel at the time of the plea. Unfortunately, *Crane* had not been decided when Wiltshire's case came before the district court, and that court mistakenly determined that despite

violating *Tweedy* and *Irish*, the 1982 conviction was valid for enhancement purposes because Wiltshire had been represented by counsel. That is not what we held in *Oliver*. Rather, *Oliver* set out a procedure for challenging past convictions.

The ability to challenge past convictions at the enhancement hearing is procedurally limited, to prevent relitigation of a conviction every time it is used for enhancement. There are, however, certain constitutional invalidities that automatically render the conviction too unreliable to be used for enhancement. Lack of counsel is such an invalidity. See *Burgett, supra* (holding invalid the use of an uncounseled conviction for enhancement). We have therefore held that the challenge of a prior conviction in which the record is silent as to whether counsel had been afforded or waived is not a collateral attack on the conviction. Such a challenge is permissible at the enhancement proceeding. *State v. Nowicki*, 239 Neb. 130, 474 N.W.2d 478 (1991); *Smith, supra*.

Thus, the first tier of the *Oliver* analysis deals with challenges raised *at the enhancement hearing*. We have stated, "Challenges to prior plea-based convictions for enhancement proceedings may only be made for the failure of the record to disclose whether the defendant had or waived counsel at the time the pleas were entered." *State v. Tejral*, 240 Neb. 329, 333, 482 N.W.2d 6, 9 (1992). See, also, *State v. Partee*, 240 Neb. 473, 482 N.W.2d 272 (1992). In other words, at the enhancement proceeding only those objections dealing with uncounseled pleas may be raised. Our language in *Tejral* makes this apparent: "The record of the [un-*Boykin*ized] 1985 conviction clearly establishes that Tejral was represented by counsel; thus, his *general objection* to its introduction was likewise properly overruled." (Emphasis supplied.) 240 Neb. at 334, 482 N.W.2d at 9-10.

Wiltshire argues that his objection at the enhancement hearing was appropriate under what is now § 39-669.08(5). It is actually § 39-669.07(3) that applies to Wiltshire's case, but the relevant language of the sections is identical. Under § 39-669.07(3), a defendant is entitled to challenge prior DWI convictions used for enhancement. The statute provides that when a prior conviction is being used for enhancement, the

"defendant shall be given the opportunity to . . . make objections on the record regarding the validity of such prior convictions."

We addressed the application of § 39-669.07 to enhancement challenges in *State v. Fraser*, 222 Neb. 862, 387 N.W.2d 695 (1986). In *Fraser*, we noted that the "objections" the statute refers to are those which would now fall in the first tier of *Oliver*: challenges based on failure to show that in the prior proceeding the defendant had counsel or that the defendant had voluntarily and intelligently waived his right to counsel. Accord *State v. Hamblin*, 223 Neb. 469, 390 N.W.2d 533 (1986).

Section 39-669.07(3) provides only for "objections," not the relitigation-type challenges falling within the second tier of *Oliver*. Unlike a lack-of-counsel challenge, which automatically makes the conviction unreliable, a *Boykin* challenge requires a review of the record and a determination of whether the plea was knowing, intelligent, and voluntary. To provide any relief to the defendant, a *Boykin* challenge would have to go beyond the mere "objection" called for by § 39-669.07(3) and rise to the level of a collateral attack. The statute does not provide for this. Wiltshire's reliance on § 39-669.07(3) for his challenge is misplaced.

Enhancement evidence challenges that do not deal with lack of counsel, including *Boykin*-based challenges, fall in the second tier of the *Oliver* analysis: "[S]uch an issue may only be raised in a direct appeal or in a separate proceeding commenced for the express purpose of setting aside the judgment alleged to be invalid." 230 Neb. at 870, 434 N.W.2d at 298. See, also, *Nowicki, supra* (stating that "direct appeal" refers to an appeal from the prior conviction).

With regard to Wiltshire's challenges, only one was properly denied. Because the transcript of the 1982 proceeding showed that Wiltshire was represented by counsel, the judge at the enhancement hearing correctly overruled Wiltshire's *Boykin objection*. That was a "second-tier" challenge and improper at the enhancement hearing.

Wiltshire did more than object, however. He also filed a petition in a "separate proceeding," in which he challenged the 1982 conviction and requested that it be set aside because it did

not comport with the requirements of *Boykin* and *Tweedy*.

Although Wiltshire complied exactly with the *Oliver* requirements for challenging a second-tier invalidity, the district court denied relief and dismissed the petition. The court reasoned that the challenges were without merit and were made "approximately nine years after the fact." The dismissal of the petition was error. When the State uses a prior, invalid conviction for enhancement, the original violation is renewed. That is the reason for allowing challenges to invalid convictions. See *Burgett v. Texas*, 389 U.S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319 (1967). Wiltshire's petition was timely, complied with *Oliver*, and raised a constitutional invalidity. The relief requested should have been granted; the 1982 conviction should not have been used for enhancement.

We hold that the denial of Wiltshire's request for a jury was error, as was the use of the invalid 1982 conviction to enhance the 1990 conviction to third-offense DWI. We therefore reverse and remand for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.