Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/23/2020 09:09 AM CDT

In re Interest of Zoie H., a child
under 18 years of age.
State of Nebraska, appellee,
v. Zoie H. appellant.

___ N.W.2d ___

Filed January 24, 2020.    No. S-18-1028.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record, and reaches its conclusions independently of the juvenile court's findings.
2. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.
3. **Constitutional Law: Appeal and Error.** The review of constitutional standards is a question of law and is reviewed independently of the trial court's determination.
4. **Constitutional Law: Statutes: Waiver.** The proper procedure for raising a facial constitutional challenge to a criminal statute is to file a motion to quash, and all defects not raised in a motion to quash are taken as waived by a defendant pleading the general issue.
5. **Constitutional Law: Convictions: Statutes.** A defendant is prohibited from attempting to circumvent or avoid conviction under a particular statute by asserting a constitutional challenge to another, collateral statute which is irrelevant to the prosecution.
6. **Criminal Law: Jury Trials.** When considering a criminal defendant's right to a jury trial, it is well established that the right does not extend to those criminal offenses categorized as petty but attaches only to those crimes that are considered serious offenses.
7. **Jury Trials: Sentences: Time: Legislature.** The right to a jury trial attaches when the potential term of incarceration exceeds 6 months or if the additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a serious one.

8. **Juvenile Courts.** Juvenile adjudications are civil, not criminal, in nature.
9. **Juvenile Courts: Weapons.** The prohibition on possessing firearms in Neb. Rev. Stat. § 28-1204.05 (Cum. Supp. 2018) is not punishment imposed for a prior juvenile adjudication.
10. **Constitutional Law: Juvenile Courts: Jury Trials.** A juvenile court proceeding is a civil proceeding, and under the doctrine of parens patriae, the constitutional guarantees of a jury trial and the incidents thereto are not applicable to a juvenile proceeding.
11. **Criminal Law: Evidence.** The owner of chattel may testify as to its value in a criminal case.

Appeal from the Separate Juvenile Court of Lancaster County: Roger J. Heideman, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, James G. Sieben, and Mark D. Carraher for appellant.

Patrick F. Condon, Lancaster County Attorney, Mary Norrie, and Elise Harris, Senior Certified Law Student, for appellee.

Heavican, Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

Zoie H. appeals from an order of the separate juvenile court adjudicating her pursuant to Neb. Rev. Stat. § 43-247(2) (Reissue 2016) for the act of attempted theft by unlawful taking, $5,000 or more. We affirm.

## I. BACKGROUND

On the afternoon of September 25, 2018, Heidi Cuca was fueling her Lexus at a convenience store in Lincoln, Nebraska. While standing outside the Lexus, Cuca observed two young females had entered her vehicle and were seated inside—one in the driver's seat and the other in the backseat. The female in the driver's seat was later determined to be Zoie.

It appeared to Cuca that Zoie was trying to start the Lexus, but was having trouble getting the engine to turn over. Cuca heard the female in the back seat shout, "'Zoie let's go.'" So

Cuca attempted to retrieve the Lexus keys from inside the vehicle and throw them. An altercation ensued, during which Zoie shouted, "'Don't, let me go. I'm going to take it.'" The convenience store manager heard Cuca yelling for help and called the 911 emergency dispatch service.

Zoie escaped before police arrived, but someone was able to grab Zoie's arm and hold her long enough for Cuca to take a photograph. Cuca provided the photograph to police, who eventually located Zoie and contacted her at school a few days later.

Sgt. Mike Ripley, an officer with the Lincoln Police Department, met with Zoie and her father to conduct a followup investigation. Zoie waived her *Miranda* rights and agreed to an interview. Zoie admitted she made plans to steal the Lexus, explaining she "'just felt like taking the car.'" Zoie described how she and a friend entered the Lexus from the passenger side while Cuca was fueling up on the other side. Zoie also described the altercation that ensued and how she eventually escaped.

## 1. Juvenile Court Proceedings

On October 16, 2018, the State filed an amended supplemental petition in the separate juvenile court of Lancaster County. It alleged that on or about September 25, 2018, Zoie intentionally engaged in conduct which, under the circumstances as she believed them to be, constituted a substantial step in a course of conduct intended to culminate in her commission of the crime of theft by unlawful taking in the amount of $5,000 or more. Attempted theft by unlawful taking is a Class IIIA felony when the value of the thing involved is $5,000 or more.[1]

Zoie filed a motion to quash the amended supplemental petition. Alternatively, she filed a demand for jury trial. Both requests were premised on the enactment of Neb. Rev. Stat.

---

[1] See Neb. Rev. Stat. §§ 28-201(4)(c), 28-511, and 28-518(1) (Reissue 2016).

§ 28-1204.05 (Cum. Supp. 2018), which went into effect on July 19, 2018, and provides in pertinent part:

> (1) . . . [A] person under the age of twenty-five years who knowingly possesses a firearm commits the offense of possession of a firearm by a prohibited juvenile offender if he or she has previously been adjudicated an offender in juvenile court for an act which would constitute a felony or an act which would constitute a misdemeanor crime of domestic violence.
>
> (2) Possession of a firearm by a prohibited juvenile offender is a Class IV felony for a first offense and a Class IIIA felony for a second or subsequent offense.

Other portions of the statute exempt members of the armed forces and law enforcement[2] and establish a procedure for those under 25 years of age to request reinstatement of the right to possess a firearm.[3] Zoie was not charged with violating § 28-1204.05, but her motion to quash alleged that adjudication for theft by unlawful taking over $5,000 "would subject [her] to criminal prosecution under an unconstitutional statute, Neb. Rev. Stat. § 28-1204.05 (Cum. Supp. 2018)." Zoie's demand for a jury trial was also premised on the enactment of § 28-1204.05. Generally speaking, she argued that the statute's restriction on firearm possession amounted to a penalty for being adjudicated and thereby rendered the adjudication proceedings a "serious criminal case" entitling her to a jury trial pursuant to *Duncan v. Louisiana*[4] and *State v. Wiltshire*.[5]

After holding a hearing, the juvenile court overruled the motion to quash, finding there was no defect on the face of

---

[2] See § 28-1204.05(3).

[3] See § 28-1204.05(4).

[4] *Duncan v. Louisiana*, 391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968).

[5] *State v. Wiltshire*, 241 Neb. 817, 491 N.W.2d 324 (1992), *overruled on other grounds, State v. Louthan*, 257 Neb. 174, 595 N.W.2d 917 (1999).

the amended supplemental petition. The juvenile court denied the demand for jury trial, reasoning that Neb. Rev. Stat. § 43-279(1) (Reissue 2016) requires the adjudication portion of juvenile court proceedings "shall be conducted before the court without a jury, applying the customary rules of evidence in use in trials without a jury." The matter proceeded to an adjudication hearing on the amended supplemental petition.

## 2. Adjudication Hearing

At the adjudication hearing, the State called three witnesses: Cuca, the convenience store manager, and Sergeant Ripley. Cuca described the events of September 25, 2018, as set out above, and identified Zoie as the female who attempted to steal the Lexus. The manager largely confirmed Cuca's testimony, and she too identified Zoie as the female who attempted to steal the Lexus. Sergeant Ripley testified about his interview with Zoie, including that she received *Miranda* warnings prior to the interview.

Both Cuca and Sergeant Ripley offered testimony about the value of the Lexus. Cuca testified that she purchased the 2012 Lexus RX350 3 years earlier for around $21,000 and that it currently had 60,000 miles on it. When Cuca was asked her opinion on the value of the Lexus, Zoie objected to the question as speculative. The objection was overruled, and Cuca answered that according to Kelley Blue Book, the value of her Lexus with 60,000 miles "is around $21,000 list price." There was no motion to strike Cuca's response and no cross-examination on Cuca's valuation testimony.

Sergeant Ripley also relied on Kelley Blue Book for his valuation testimony. He estimated the "average trade in value" of the Lexus was $15,529. He did not contact Cuca to get information on the vehicle's mileage, condition, or accessories. Instead, he used the value for a "base model" Lexus in "good" condition with 75,000 miles. When asked on cross-examination what the value of the Lexus would be if its condition had been "poor," Sergeant Ripley estimated it would still be between $10,000 and $12,000. He testified it was unlikely a 2012

Lexus in working condition would be worth less than $5,000. He based his opinion on his experience investigating car thefts and his research into the value of Cuca's Lexus. There was no objection to Sergeant Ripley's valuation testimony or to the admission of the Kelley Blue Book printout showing that valuation.

Zoie rested without presenting any evidence. In a journal entry and order filed October 23, 2018, the juvenile court adjudicated Zoie on the allegations of the amended supplemental petition, finding the State proved beyond a reasonable doubt that Zoie was a juvenile as described in § 43-247(2).

Zoie timely appealed and filed a petition to bypass that included a notice of constitutional question under Neb. Ct. R. App. § 2-109(E) (rev. 2014). We granted the petition to bypass.

## II. ASSIGNMENTS OF ERROR

Zoie assigns, restated, that the juvenile court erred by (1) overruling her motion to quash, (2) denying her demand for jury trial, and (3) finding she committed the act of attempted theft by unlawful taking, $5,000 or more, when the State failed to meet its burden of proof regarding the value of the vehicle.

## III. STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[6]

[2] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[7]

[3] The review of constitutional standards is a question of law and is reviewed independently of the trial court's determination.[8]

---

[6] *In re Adoption of Micah H.*, 301 Neb. 437, 918 N.W.2d 834 (2018).

[7] See *id.*

[8] *State v. Montoya, ante* p. 96, 933 N.W.2d 588 (2019).

## IV. ANALYSIS

### 1. Motion to Quash

[4] Neb. Rev. Stat. § 29-1808 (Reissue 2016) provides, "A motion to quash may be made in all cases when there is a defect apparent upon the face of the record, including defects in the form of the indictment or in the manner in which an offense is charged." We have consistently held that the proper procedure for raising a facial constitutional challenge to a criminal statute is to file a motion to quash, and all defects not raised in a motion to quash are taken as waived by a defendant pleading the general issue.[9]

But here, Zoie's motion to quash did not challenge the constitutionality of the criminal statute on which she was being adjudicated. Instead, her motion to quash raised a facial constitutional challenge to an entirely different statute, § 28-1204.05. Zoie sought to quash the amended supplemental petition by arguing that adjudication for acts that would constitute theft by unlawful taking over $5,000 "would subject [her] to criminal prosecution under an unconstitutional statute, Neb. Rev. Stat. § 28-1204.05."

[5] In the criminal context, a defendant is prohibited from attempting to circumvent or avoid conviction under a particular statute by asserting a constitutional challenge to another, collateral statute which is irrelevant to the prosecution.[10] We have generally described this as a rule of standing and have applied it to motions to quash in a criminal prosecution, reasoning that a defendant has standing to challenge only those statutes that are relevant to the prosecution.[11] We conclude this rule is equally applicable to motions to quash filed in juvenile adjudication proceedings.

---

[9] *State v. Hibler*, 302 Neb. 325, 923 N.W.2d 398 (2019).

[10] *State v. Harris*, 284 Neb. 214, 817 N.W.2d 258 (2012); *State v. Cushman*, 256 Neb. 335, 589 N.W.2d 533 (1999).

[11] See *id.*

Zoie was being adjudicated for acts which would constitute felony theft by unlawful taking, and her motion to quash challenged the constitutionality of § 28-1204.05, a statute that was collateral to the adjudication, and which would apply, if at all, only after an adjudication. Zoie was attempting to avoid adjudication by challenging the constitutionality of a statute that was irrelevant to the statutes under which the State was seeking adjudication, and the juvenile court correctly overruled the motion to quash.

Given our resolution of this assignment of error, we do not reach, in this appeal, any of Zoie's constitutional challenges to § 28-1204.05.

## 2. Demand for Jury Trial

In her second assignment of error, Zoie argues that if § 28-1204.05 is constitutional, it effectively transforms a juvenile adjudication for an act which would be a felony or a misdemeanor act of domestic violence into a serious criminal offense to which the right to a jury trial attaches.

[6,7] When considering a criminal defendant's right to a jury trial, it is well established that the right does not extend to those criminal offenses categorized as "'petty,'" but attaches only to those crimes that are considered "serious[]" offenses.[12] This court has said that the right to a jury trial attaches when the potential term of incarceration exceeds 6 months or if the "'additional statutory penalties, viewed in conjunction with the maximum authorized period of incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a "serious" one.'"[13]

Zoie urges us to apply the "serious offense" test to her juvenile adjudication, and she asks us to find that the passage of § 28-1204.05 reflects a legislative determination that

---

[12] See *Blanton v. North Las Vegas*, 489 U.S. 538, 541, 109 S. Ct. 1289, 103 L. Ed. 2d 550 (1989).

[13] *Wiltshire, supra* note 5, 241 Neb. at 820-21, 491 N.W.2d at 327.

juvenile adjudications for acts which would constitute a felony are serious offenses that must be tried to a jury. Her argument is premised on the fundamental assumption that § 28-1204.05 imposes a criminal penalty for juvenile adjudication. We explore that assumption first and reject it. We then consider the right to jury trial generally in juvenile court adjudications, and we conclude the juvenile court correctly denied Zoie's demand for a jury trial.

(a) § 28-1204.05 Is Not Penalty
for Juvenile Adjudication

To address Zoie's argument that § 28-1204.05 transforms juvenile adjudications into serious offenses that require a jury trial, we first consider whether § 28-1204.05 can fairly be characterized as punishing juvenile adjudication at all. The answer to this question is key because if § 28-1204.05 is not punishment imposed for her juvenile adjudication, then Zoie's argument that § 28-1204.05 transforms the adjudication into a serious offense necessarily fails.

[8] In the criminal context, we often analyze such questions using the "'intent-effects'" test established by the U.S. Supreme Court, "which requires an initial determination of whether the Legislature intended the statute to be criminal or civil [in nature]."[14] But juvenile adjudications are civil, not criminal, in nature. As we explained in *In re Interest of Laurance S.*:[15]

"We have long recognized that a juvenile court proceeding is not a prosecution for crime, but a special proceeding that serves as an ameliorative alternative to a criminal prosecution. . . . The purpose of our statutes relating to the handling of youthful offenders is the education,

---

[14] See *State v. Payan*, 277 Neb. 663, 670, 765 N.W.2d 192, 200 (2009) (applying test from *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003)).

[15] *In re Interest of Laurance S.*, 274 Neb. 620, 624, 742 N.W.2d 484, 488 (2007).

treatment, and rehabilitation of the child, rather than retributive punishment. . . . The emphasis on training and rehabilitation, rather than punishment, is underscored by the declaration that juvenile proceedings are civil, rather than criminal, in nature."

A juvenile adjudication does not result in a conviction and sentence; instead, when a juvenile is adjudicated for acts which would constitute a felony, Neb. Rev. Stat. § 43-286 (Cum. Supp. 2018) sets out the dispositional options available to the juvenile court. And even when a disposition is similar to that imposed as punishment for a crime, we have not found the disposition to be punishment.[16] Because juvenile adjudications are civil rather than criminal in nature, it is difficult to envision any circumstance under which a juvenile disposition could be successfully challenged as punishment.

Here, of course, the prohibition on possessing firearms contained in § 28-1204.05 is not part of the juvenile code, but, rather, it is contained within the statutory provisions governing criminal offenses. To answer the question whether § 28-1204.05 is properly characterized as punishment for the juvenile adjudication, we find guidance in our holding in *State v. Peters*.[17]

In that case, we held that a similar statute, Neb. Rev. Stat. § 28-1206 (Reissue 1995), which prohibits firearm possession by convicted felons, does not impose punishment for the prior felony. We reasoned that although § 28-1206 punished the specific conduct of possessing a firearm after being convicted of a felony, it did not increase the punishment for the prior felony. In *Peters*, we recognized that one's status

---

[16] See, e.g., *In re Interest of Brandon M.*, 273 Neb. 47, 727 N.W.2d 230 (2007) (dispositional order of restitution in juvenile court rehabilitative in nature and not punishment); *In re Interest of A.M.H.*, 233 Neb. 610, 447 N.W.2d 40 (1989) (dispositional placement of juvenile in youth training center is not punishment, but, rather, is furnishing of protection, care, and training by State as substitution for parental authority).

[17] *State v. Peters*, 261 Neb. 416, 622 N.W.2d 918 (2001).

as a convicted felon made the statutory firearm prohibition applicable, but we found the legal consequences for the past criminal conduct remain unchanged. Stated differently, the statutory prohibition on possessing firearms may be a collateral consequence of a prior felony conviction, but it is not part of the punishment imposed for that prior felony conviction. We noted that the majority of jurisdictions agree that statutes prohibiting felons from possessing firearms "are viewed not as further punishment for the underlying felony or felonies, but as a future prohibition on a felon's conduct."[18]

[9] Given our holding in *Peters* that the prohibition on possessing firearms in § 28-1206 is not punishment for the prior felony conviction, we likewise hold that the prohibition on possessing firearms in § 28-1204.05 is not punishment imposed for a prior juvenile adjudication. We therefore reject Zoie's argument that § 28-1204.05 transformed her juvenile adjudication into a serious offense and entitled her to a jury trial. And as we explain below, we see no other legal basis on this record to support Zoie's demand for a jury trial in her juvenile court adjudication.

### (b) No Constitutional Right to Jury in Juvenile Adjudications

The U.S. Supreme Court in *McKeiver v. Pennsylvania*[19] held that a jury trial is not constitutionally required in a juvenile court's adjudicative stage. The plurality opinion discussed the Court's earlier decisions in *Kent v. United States*,[20] *In re Gault*,[21] and *In re Winship*[22] and reasoned generally that the

---

[18] *Id.* at 422, 622 N.W.2d at 924.

[19] *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S. Ct. 1976, 29 L. Ed. 2d 647 (1971).

[20] *Kent v. United States*, 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966).

[21] *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967).

[22] *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

full spectrum of criminal constitutional rights afforded adults has not been imposed on juvenile court proceedings. *McKeiver* emphasized, however, that if a state decides to offer jury trials in juvenile adjudications that would be its "privilege and not its obligation."[23]

Post-*McKeiver*, some states have extended the right to jury trial to juvenile adjudications under certain circumstances, through either statutes or court decisions.[24] But the majority have not,[25] including Nebraska.

Nebraska's preeminent case on the issue is the pre-*McKeiver* case of *DeBacker v. Brainard*.[26] There, we considered a habeas petition challenging the constitutionality of a recently enacted statute requiring that juvenile court hearings "shall be conducted by the judge without a jury in an informal manner, applying the customary rules of evidence in use in civil trials without a jury in the district courts."[27] The juvenile at issue had been adjudicated delinquent for the act of forgery, a felony, and

[23] *McKeiver, supra* note 19, 402 U.S. at 547.

[24] See, e.g., Kan. Stat. Ann. § 38-2357 (Cum. Supp. 2018) (granting juveniles right to request jury trial); Mass. Gen. Laws Ann. ch. 119, § 55A (West 2017) (requiring trial by jury unless waived); *In re L.M.*, 286 Kan. 460, 186 P.3d 164 (2008) (holding juvenile code lost its parens patriae character and concluding juveniles have right to jury trial under Kansas Constitution); *RLR v. State*, 487 P.2d 27 (Alaska 1971) (holding state constitution guarantees juvenile's right to jury trial).

[25] See, e.g., Conn. Gen. Stat. Ann. § 54-76e (West 2009) ("trial shall be held by the court without a jury"); § 43-279; S.D. Codified Laws § 26-7A-30 (2016) (lists rights of juveniles but does not include right to jury trial); *In re A.K.*, 825 N.W.2d 46, 51 (Iowa 2013) ("[n]either statutory nor constitutional provisions guarantee juveniles the right to a jury trial"); *State v. Burns*, 205 S.W.3d 412, 416 (Tenn. 2006) ("legislature has determined that, while they are still within the juvenile court system, our juveniles are to be tried by judges, not juries"); *Richard M. v. Superior Court*, 4 Cal. 3d 370, 482 P.2d 664, 93 Cal. Rptr. 752 (1971) (jury trial is inapplicable in juvenile proceedings).

[26] *DeBacker v. Brainard*, 183 Neb. 461, 161 N.W.2d 508 (1968).

[27] Neb. Rev. Stat. § 43-206.03 (Reissue 1968).

was placed at a boys' training school. He filed a petition for writ of habeas corpus, alleging § 43-206.03 was unconstitutional because it denied him the right to a jury trial. The district court rejected the constitutional claim and denied habeas relief. On appeal, four members of this court opined that the new statute was unconstitutional because it denied juveniles the right to a jury trial for acts that would be felonies if charged as an adult. In large part, the majority read the U.S. Supreme Court's *In re Gault* decision to require such a result. Three judges, however, found *In re Gault* "does not hold or even infer that a jury trial is essential to due process in a delinquency case, even where the supporting evidence points to criminal conduct on the part of the juvenile."[28] Due to the absence of a supermajority under Neb. Const. art. V, § 2, this court affirmed the dismissal of the habeas petition.[29]

[10] The following year, a majority of this court again held that "a juvenile court proceeding, under the controlling statute in the State of Nebraska, is a civil proceeding and under the doctrine of parens patriae, the constitutional guarantees of a jury trial and the incidents thereto are not applicable to a juvenile proceeding under our statute."[30]

Currently, § 43-279(1) provides in part: "The adjudication portion of hearings shall be conducted before the court without a jury, applying the customary rules of evidence in use in trials without a jury." Zoie does not directly challenge the constitutionality of § 43-279(1), but instead argues that the enactment of § 28-1204.05 "elevates felonies alleged in juvenile court to 'serious criminal case' status [so] the constitutional requirement of a jury trial right supersedes the language in § 43-279(1)."[31]

---

[28] *DeBacker, supra* note 26, 183 Neb. at 477, 161 N.W.2d at 516.

[29] See, also, *Laurie v. State*, 108 Neb. 239, 188 N.W. 110 (1922) (juvenile petition does not charge crime and does not entitle juvenile to jury trial).

[30] *McMullen v. Geiger*, 184 Neb. 581, 584, 169 N.W.2d 431, 433 (1969). See, also, *Laurie, supra* note 29.

[31] Brief for appellant at 45.

Recognizing that juvenile adjudications are civil in nature, and having rejected the premise that § 28-1204.05 imposes a penalty for juvenile adjudication, we agree with the juvenile court that § 43-279(1) requires a juvenile adjudication hearing to be conducted without a jury. Zoie's second assignment of error lacks merit.

### 3. Burden of Proof Regarding Value of Property

In her final assignment of error, Zoie argues that the evidence presented at the adjudication hearing was insufficient to prove the value of the Lexus. The amended supplemental petition alleged Zoie committed acts which would constitute the Class IIIA felony of attempted theft by unlawful taking, $5,000 or more. Under § 28-518(8), value is an essential element of the offense of theft which must be proved beyond a reasonable doubt.

The juvenile court found the State had met its burden of proof and adjudicated Zoie under § 43-247(2) as a juvenile who committed an act which would constitute a felony under the laws of this State. On appeal, Zoie challenges only the sufficiency of the evidence regarding the value of the Lexus, and we limit our analysis accordingly. After a de novo review of the record, we find the State met its burden of proving that the Lexus had a value of $5,000 or more.

[11] It has long been the rule in Nebraska that the owner of chattel may testify as to its value in a criminal case.[32] At the adjudication hearing, Cuca testified that her Lexus had a value "around $21,000." The investigating officer testified, based on his experience investigating car thefts and his research into the value of Cuca's Lexus, that it had a value of $15,529 if it was in good condition. Moreover, he testified it would have a value in excess of $10,000 even in poor condition. Zoie did not object to this testimony and presented no evidence to the contrary.

---

[32] See *State v. Holland*, 213 Neb. 170, 328 N.W.2d 205 (1982).

On this record, we find the State presented sufficient evidence to prove beyond a reasonable doubt that the value of the Lexus was $5,000 or more. We therefore conclude that the evidence was sufficient to adjudicate Zoie under § 43-247(2) and that her third assignment of error has no merit.

## V. CONCLUSION

For the foregoing reasons, we affirm the juvenile court's order.

Affirmed.