IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF ADRIANA M. & MARCIANO M.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ADRIANA M. AND MARCIANO M.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,

V.

ROBERT M., APPELLANT, AND PRISCILLA M., APPELLEE AND CROSS-APPELLANT.

Filed February 22, 2022.    Nos. A-21-625, A-21-626.

Appeals from the County Court for Scotts Bluff County: KRIS D. MICKEY, Judge. Affirmed.

Rhonda R. Flower, of Law Office of Rhonda R. Flower, for appellant.

Travis R. Rodak, Deputy Scotts Bluff County Attorney, for appellee State of Nebraska.

William E. Madelung, of Madelung Law Office, P.C., L.L.O., for appellee Priscilla M.

PIRTLE, Chief Judge, and RIEDMANN and WELCH, Judges.

RIEDMANN, Judge.

INTRODUCTION

Robert M. appeals, and Priscilla M. cross-appeals, the order of the county court for Scotts Bluff County, sitting as a juvenile court, which terminated their parental rights to their minor children. Upon our de novo review of the record, we find that the evidence was sufficient to support the juvenile court's decision. We therefore affirm.

- 1 -

BACKGROUND

Robert and Priscilla are the adoptive parents of Adriana M., born in February 2003, and Marciano M., born in July 2008, and Priscilla is the children's maternal aunt. The children were initially placed with Robert and Priscilla in October 2012, and their adoption was finalized in December 2013.

In January 2021, Adriana reported that Robert had sexually abused her for several years. The State removed the children from Robert and Priscilla's care at that time and filed petitions alleging that the children came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) in that a juvenile or sibling of the juvenile had been sexually assaulted in the home or that Robert and Priscilla neglected or refused to provide the juvenile or a sibling of the juvenile with necessary parental care, support, or protection. Ten days later, the State filed a motion to terminate Robert's and Priscilla's parental rights to Adriana under Neb. Rev. Stat. § 43-292(1), (2), (3), and (9) (Reissue 2016). At the same time, the State filed a motion to terminate Robert's and Priscilla's parental rights to Marciano under § 43-292(2) and (9). The motions alleged that termination was in the best interests of the children.

A joint adjudication and termination hearing was held in May 2021. The evidence established that Adriana moved out of Robert and Priscilla's home at some point, going to live with her grandmother, and that she never returned. The record is unclear as to the year of her departure, whether it occurred in January 2019 or January 2020; Adriana testified at her deposition that she moved out in January 2019, and the juvenile court found that she last lived in the home at that time, whereas Adriana's grandmother testified that Adriana began living with her in January 2020, and Priscilla claimed that Adriana left the home around February 2020.

Regardless, Adriana explained that she left because of an "incident" where Robert accused her of looking at an inappropriate photo on her cell phone, which she denied doing, but more so because she was tired of arguing with Robert and Priscilla and did not feel welcome in their home any longer. Priscilla, likewise, testified as to numerous arguments between them, but claimed that she and Robert kicked Adriana out of their house because she was not following the rules. Priscilla testified that Adriana refused to follow their rules and would lie to them about things such as having social media accounts, having a boyfriend, and having a different cell phone.

When Adriana left Robert and Priscilla's home, she took some of her clothing with her, but she was never able to return to get the rest of her things. She testified that Marciano told her that Robert and Priscilla threw away the rest of her belongings. Priscilla told the Nebraska Department of Health and Human Services (DHHS) caseworker that after Adriana left, she was not allowed back into the home, that she and Robert had "severed that relationship," and that they had let Adriana know that they no longer wanted to have a relationship with her. Adriana similarly testified that when she left, Priscilla told her that she wanted nothing to do with her and did not want to hear from her. Once Adriana began living with her grandmother, Robert and Priscilla no longer provided anything for her such as food, clothing, medical care, or rides to school or work. All of those needs were provided by Adriana's grandmother or aunt. Robert and Priscilla did not come to visit Adriana while she was living with her grandmother.

Robert and Priscilla also shut off Adriana's cell phone, but Priscilla testified that as long as Adriana had internet access, she was still able to contact her on her phone using a messenger

app. Robert and Priscilla continued to monitor Adriana's school attendance and grades, and Priscilla would contact her on the messenger app when there were school-related issues. The caseworker testified that when Robert and Priscilla would address concerns with her about Adriana's behavior, attendance, or grades, however,

> it kind of felt like it wasn't that they were really concerned about her well-being, but it was more of them pointing the finger at her kind of like, see, she's doing these things, she has behaviors . . . that need to be addressed and so forth, but it didn't really feel like there was any caring behind it.

According to the caseworker, neither Robert nor Priscilla ever inquired into Adriana's well-being.

In January 2021, Adriana reported that Robert had sexually abused her for several years. In her deposition, Adriana testified that Robert made her perform oral sex on him for the first time when she was 13 or 14 years old and that thereafter, it happened "all the time." She testified that he first had sex with her when she was about 14 years old and that it also happened "a lot." She explained that finally, around the time she turned 16, she got "fed up" and threatened to tell her grandmother what he was doing. She also described that Robert has a birthmark on his penis, and a photo of the birthmark was received into evidence.

On January 29, 2021, Robert was arrested for sexually assaulting Adriana, and Marciano was removed from Robert and Priscilla's home. A police investigator who was present at the time opined that Priscilla showed more concern for Robert than for Adriana, explaining that Priscilla immediately began to ask questions about how much his bond would be and how soon she could bail him out, but showed no concern for Adriana, calling her a "compulsive liar."

Likewise, the DHHS initial intake worker present at the time spoke to Priscilla and advised her of the sexual abuse allegations and recalled that Priscilla's response was to call Adriana a liar. Even after describing to Priscilla the detail at which Adriana was able to recount the sexual abuse, Priscilla continued to call Adriana a "vindictive child" and claimed that she hated living in their house, so she was going to lie. When the intake worker asked how Adriana would be able to describe the birthmark on Robert's penis, Priscilla first thought maybe she had told Adriana about it but then retracted that statement and said she would not have done so but had no other explanation at that time. At the termination hearing, Priscilla claimed that one time she and Adriana were discussing birthmarks and that she told Adriana that "'Robert has one on his private part.'"

Approximately a month after Robert was arrested and Marciano was removed from the home, Priscilla moved into a different residence with only two bedrooms, which she set up for Marciano and herself until Robert was released from jail on bond. This type of arrangement, according to the caseworker, indicates that Priscilla had no plan of Adriana returning to the home. After Robert was released on bond, he moved back into Priscilla's home, and Robert and Priscilla remained living together at the time of the termination hearing, while he was awaiting trial on his criminal charges. According to the caseworker, Priscilla continued to believe that Adriana was lying about what Robert did to her, and when the caseworker challenged Priscilla on that idea, Priscilla indicated that she loved Robert and was going to stand by him no matter what, even if the allegations were true.

During the pendency of the case, there was a no contact order for Robert and Adriana. Priscilla requested visitation with Marciano but refused to have any contact or visits with Adriana.

At the termination hearing, Priscilla was asked if she would be willing to have visits with Adriana, and she said no because Adriana never liked to follow her rules and stressed her out. She was asked whether she thought that Adriana should return to her home at that point, and she responded, "No."

The juvenile court entered a written order following the conclusion of the hearing. The court found that the preponderance of the evidence supported adjudication on the grounds that Robert and Priscilla neglected or refused to provide the juvenile or a sibling of the juvenile with necessary parental care, support, and protection. The court also found clear and convincing evidence to support terminating their parental rights to Adriana under § 43-292(1), (2), and (3) and to Marciano under § 43-292(2). Adriana did not testify in person at the termination hearing. So, given the absence of any ability to assess Adriana's credibility aside from the written trial deposition that was received into evidence, the court found that there was insufficient evidence to meet the State's burden to prove adjudication or termination because of the alleged sexual assaults.

On the other hand, the court found that the evidence was sufficient to establish that Adriana had been out of the family home since January 2019, and that since that time, she had had essentially no contact with Robert or Priscilla, they did not bring her the rest of her clothing, they threw away her remaining belongings, they did not buy her new clothing, they did not supply any food for her, they did not take her to medical appointments or to school, they did not provide alternative shelter for her, and they did not provide for her financially. Robert and Priscilla did not attempt to inquire directly with Adriana concerning her status or well-being, and they did not offer to get her into counseling. The court found that, as argued by the State, Robert and Priscilla "'washed their hands'" of Adriana and cut her out of the family, or in other words, they abandoned her. The court determined that this kind of neglect that Robert and Priscilla demonstrated toward Adriana established a basis for termination as to both children. The court also found that the evidence established that termination of their parental rights was in the best interests of the children. Robert appeals, and Priscilla cross-appeals.

## ASSIGNMENTS OF ERROR

On appeal, Robert assigns, restated, renumbered, and summarized, that the juvenile court erred in (1) finding sufficient evidence to prove statutory grounds for termination and (2) adjudicating the children under § 43-247(3)(a).

On cross-appeal, Priscilla assigns that the juvenile court erred in finding that the State proved (1) one or more of the statutory grounds for termination and (2) that termination was in the best interests of the children.

We note that Priscilla failed to comply with the rules regarding cross-appeals. See Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2022). Robert was the first party to file a notice of appeal, and therefore, he was the appellant. Once a notice of appeal is filed, all other parties become appellees and can file a cross-appeal. Neb. Ct. R. App. P. § 2-101 (rev. 2022). Priscilla, however, did not designate her brief as a cross-appeal on its cover; rather she filed her brief as an appellant.

A cross-appeal must be properly designated, pursuant to § 2-109(D)(4), if affirmative relief is to be obtained. *In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999). The appellate courts of this state have always refused to consider a prayer for affirmative relief where such a claim is raised in a brief designated as that of an appellee. *Id*. We have, in the past, decided to entertain a procedurally defective cross-appeal only where such cross-appeal has been

mistakenly asserted as an appellant's brief. *Id*. Even this is a matter left solely to the discretion of the courts and does not imply a willingness to consider such defective appeals in the future. *Id*. We elect to consider the errors assigned in Priscilla's brief.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Zoie H.*, 304 Neb. 868, 937 N.W.2d 801 (2020).

ANALYSIS

*Statutory Grounds for Termination.*

Robert and Priscilla each assign that the juvenile court erred in finding sufficient statutory grounds to support terminating their parental rights. We conclude that the evidence was sufficient to establish that termination was appropriate as to both children under § 43-292(2).

In order to terminate an individual's parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the children's best interests. *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015). One such ground is when the parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection. § 43-292(2). A parent's failure to provide an environment to which his or her children can return can establish substantial, continual, and repeated neglect. *In re Interest of Joseph S. et al., supra*. One need not have physical possession of a child to demonstrate the existence of neglect contemplated by § 43-292(2). *In re Interest of Joseph S. et al., supra*.

In the present case, the evidence shows that from the time Adriana moved out of Robert and Priscilla's home until January 2021 when she reported the sexual abuse, she had little contact with her parents and they provided little, if any, parental care and support for her. Adriana acknowledged receiving some messages from Priscilla regarding her grades at school or her failing to go to her job. According to the caseworker, however, there was no real concern expressed but more of a showing that Adriana continued displaying "behaviors" that needed to be addressed.

Priscilla admitted that she did not provide any food, clothing, or rides to work or school for Adriana after the time she moved out. Either her grandmother or her aunt provided for Adriana's needs once she left Robert and Priscilla's home. Adriana was never able to retrieve the rest of her belongings, and according to Marciano, Robert and Priscilla threw them away. There was no evidence that they bought her any new clothing, shoes, toiletries, or other personal items or that they provided financial support for her to purchase necessary items, nor was there any evidence that they offered her any emotional support, love, or parental guidance once she lived with her grandmother. In addition, Priscilla moved to a new residence shortly after Marciano was removed from the home, and the set-up of her new two-bedroom home indicated no intention of allowing Adriana back into her home. Moreover, Priscilla expressly stated that Adriana was not welcome back into her home, that she and Robert had "severed that relationship," and that they had let Adriana know that they no longer wanted to have a relationship with her. Adriana similarly testified that when she left, Priscilla told her that she wanted nothing to do with her and did not want to hear from her.

During the case, Priscilla requested visitation with Marciano but refused to have any contact or schedule any visits with Adriana. Priscilla admitted at trial that she was unwilling to have visits with Adriana because Adriana never liked to follow the rules and stressed her out, and she did not think that Adriana should come home. Throughout the entirety of the case, there was no contact between Robert and Adriana because of the no contact order.

Furthermore, the evidence shows that Priscilla prioritized Robert over Adriana. After Adriana reported that Robert had sexually abused her, Priscilla immediately expressed support for Robert, calling Adriana a "compulsive liar" and a "vindictive child." In the opinion of the police investigator who participated in the case, at the time of Robert's arrest when Priscilla first learned of the allegations, she showed more concern for Robert than for Adriana, immediately questioning how much his bond would be and when she could bail him out of jail. After Robert was released from jail on bond, he moved back into Priscilla's new home, and they were still living together at the time of trial. According to the caseworker, Priscilla felt that Adriana was lying about what happened and expressed that she loved Robert and was going to stand by him even if the allegations were true.

Our de novo review of the record shows that Robert and Priscilla refused to give Adriana any sort of parental care and support once she moved out of their home. Moreover, by Priscilla standing by Robert and allowing him to continue to live in the home while out on bond, they failed to provide an environment to which Adriana could return if she chose to do so. The evidence therefore establishes that Robert and Priscilla neglected Adriana, satisfying the requirements of § 43-292(2). And by substantially and continuously or repeatedly neglecting and refusing to give Adriana, a sibling of Marciano, necessary parental care and protection, the evidence also supports terminating Robert's and Priscilla's parental rights to Marciano under § 43-292(2).

Section 43-292 requires that the State prove only one of the enumerated statutory grounds for termination of parental rights. See *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). Because we conclude that there is sufficient evidence to support termination under § 43-292(2), we need not address whether the evidence was sufficient to support termination under any other subsections.

*Best Interests.*

Priscilla also assigns that the juvenile court erred in determining that terminating her parental rights was in the children's best interests. Upon our de novo review of the record, we find sufficient evidence to establish that terminating both Robert's and Priscilla's parental rights was in the best interests of the children.

Generally, when termination is sought under subsections other than subsection (7) of § 43-292, the evidence adduced to prove the statutory grounds for termination will also be highly relevant to the best interests of the juvenile, as it would show abandonment, neglect, unfitness, or abuse. *In re Interest of Joseph S.*, 291 Neb. 953, 870 N.W.2d 141 (2015). In proceedings to terminate parental rights, the law does not require perfection of a parent; instead, courts should look for the parent's continued improvement in parenting skills and a beneficial relationship between parent and child. *Id.*

In the present case, the evidence does not indicate continued improvement in parenting skills or a beneficial relationship. Priscilla refused to offer any sort of parental care and support

for Adriana after she moved out or even to have any contact with her. She refused visitation with Adriana, at which time she could have worked to improve her parenting skills and improve their relationship. Likewise, Robert, by way of the no contact order, was, of course, prevented from having any contact with Adriana. Thus, he, too, had no real relationship with her. As the juvenile court found, Robert and Priscilla essentially washed their hands of Adriana and do not appear to have any interest in improving their relationship with her.

The evidence related to Marciano was much less substantial, and we recognize that Priscilla did request, and receive, visitation with him. However, her choice to show greater concern and support for Robert, after hearing the allegations Adriana made against him, than for her minor daughter do not indicate appropriate parenting skills, and there was no evidence to show that she was willing to put Adriana's and Marciano's needs above Robert's. Further, allowing Robert to move back into her home after he was released on bond was a decision that placed Marciano at risk of harm. The record does not show that either parent was willing or able to work to improve their parenting skills in a time or manner that would justify delaying the termination of their parental rights. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Alec S.*, 294 Neb. 784, 884 N.W.2d 701 (2016). We therefore conclude that the juvenile court did not err in finding that terminating Robert's and Priscilla's parental rights to Adriana and Marciano was in the children's best interests.

*Adjudication.*

Finally, Robert assigns that the juvenile court erred in adjudicating the children under § 43-247(3)(a). We disagree.

The factual allegations of a petition seeking to adjudicate a child must give a parent notice of the bases for seeking to prove that the child is within the meaning of § 43-247(3)(a). *In re Interest of Vladimir G.*, 306 Neb. 127, 944 N.W.2d 309 (2020). And the State then has the burden to prove the allegations of the petition by a preponderance of the evidence, which is the equivalent of the greater weight of the evidence. *Id*. The greater weight of the evidence means evidence sufficient to make a claim more likely true than not true. *Id*.

The juvenile court here adjudicated the children on the grounds that they were juveniles in a situation dangerous to life or limb or injurious to their health or morals because Robert and Priscilla neglected or refused to provide the juvenile or a sibling of the juvenile with necessary parental care, support, or protection. The language of these allegations is similar to the language of § 43-292(2) in that they both assert that Robert and Priscilla neglected the juvenile or a sibling of the juvenile. Above we found the evidence sufficient to prove by clear and convincing evidence that Robert and Priscilla neglected Adriana by refusing to provide her with necessary parental care, support, or protection after she moved out of their home. That same evidence supports the juvenile court's decision to adjudicate the children under § 43-247(3)(a) based on their parents' neglect. We therefore affirm the court's decision in this regard.

For the sake of completeness, we also note that a prior adjudication is not required when termination of parental rights is sought under § 43-292(2). See *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999) (where parent has been afforded procedural due process, it is not necessary to adjudicate child as juvenile under Nebraska Juvenile Code prior to termination of parental rights under § 43-292(1) through (5)).

## CONCLUSION

Having found the evidence was sufficient to support the juvenile court's decision, we affirm the court's order adjudicating the children under § 43-247(3)(a) and terminating Robert's and Priscilla's parental rights to Adriana and Marciano.

AFFIRMED.